**JOO SENG HONG KONG CO., LTD., Plaintiff,**

v.

**S.S. UNIBULKFIR, her engines, boilers, etc. and Grand Wisdom Transports, Inc., Transamerican Steamship Corp., and Cook Industries, Inc., Defendants.**

**No. 78 CIV 2439 (LBS).**

United States District Court, S. D. New York.

March 18, 1980.

See *B. R. DeWitt, Inc. v. Hall*, 19 N.Y.2d 141, 278 N.Y.S.2d 596, 225 N.E.2d 195 (1967).

Vincent, Berg, Russo, Marcigliano & Zawacki, Alfred J. Will, New York City, for plaintiff.

Donovan, Maloof, Walsh & Kennedy, New York City, for defendant Transamerican Steamship Corp.

Symmers, Fish & Warner, New York City, for defendant Cook Industries, Inc.

## OPINION

SAND, District Judge.

Joo Seng Hong Kong Co., Ltd. ("Joo Seng") brings this action to recover damages of some $85,000 for the short shipment or non-delivery of approximately 371.28 metric tons of soybean carried aboard the S.S. Unibulkfir ("Unibulkfir"). In addition to the Unibulkfir, the defendants are: Transamerican Steamship Corporation ("Transamerican"), the time charterer or "sub-time charterer" of the Unibulkfir; Cook Industries, Inc., the vessel's voyage charterer and the seller of the soybean to Joo Seng as well as the party named as both shipper and consignee on the relevant bills of lading; and Grand Wisdom Transports, Inc. ("Grand Wisdom"), which has neither answered nor appeared. Grand Wisdom's role in the events leading up to this litigation is no longer clear.[1]

In a previous opinion, this Court denied Cook's motion for an order staying plaintiff's claim against it pending arbitration and upheld plaintiff's right to pursue its claim against Cook in a federal forum under the Carriage of Goods by Sea Act, 46 U.S.C. § 1300 et seq. ("COGSA"). *Joo Seng*

Hong Kong Co., Ltd. v. S.S. Unibulkfir, et al., D.C., 483 F.Supp. 43 (1979) ("Joo Seng I"). Cook now moves for summary judgment pursuant to F.R.Civ.P. 56 on the ground that plaintiff's claim is barred by COGSA's one year statute of limitations. Transamerican also moves for summary judgment, but its motion is based on the assertions that it was not a carrier of the shipment involved herein, that it was not a party to the bills of lading and that it is thus not subject to suit on those bills under COGSA.[2] Alternatively, Transamerican seeks dismissal of plaintiff's claims against it pursuant to F.R.Civ.P. 12(b)(6). In addition to challenging defendants' assertions, Joo Seng cross-moves for a stay pending arbitration in New York on the ground that its claims are based on the Joo Seng/Cook sales contract and the Cook/Transamerican charter party as incorporated by the bills of lading.

Cook's motion for summary judgment is granted insofar as it pertains to plaintiff's COGSA claim. Transamerican's motion for summary judgment and plaintiff's motion for a stay pending arbitration in New York are both denied. Plaintiff's contractual claim against Cook is stayed pending arbitration in London. We begin by describing facts and allegations only recently brought to the Court's attention.[3]

---

1. The Court was originally led to believe that Grand Wisdom owned the Unibulkfir. Although it now appears that this may not be the case, *see* discussion *infra*, the parties have provided the Court with no further information as to the role played by Grand Wisdom.

2. At oral argument, the Court was informed that Transamerican granted plaintiff an extension of time to sue under COGSA. Accordingly, Transamerican does not assert the statute of limitations as a defense.

3. Familiarity with the facts set forth in *Joo Seng I* is assumed in the discussion that follows.

It has become apparent from assertions at oral argument as well as in defendants' briefs that the parties may have misconstrued the thrust and implications of *Joo Seng I*. In maritime litigation of this sort, where some or all of the parties are typically foreign corporations, it frequently takes some time for a plaintiff to ascertain the circumstances surrounding the issuance of the relevant bills of lading as well as

other basic information concerning the roles played by various defendants. *See e.g., Paterson Zochonis (U.K.) Ltd. v. Compania United Arrows, S.A.*, D.C., —— F.Supp. ——, 77 Civ. 4770 (LBS) (February 21, 1980). In this context, it seems particularly important that a cargo plaintiff be able to conduct at least some discovery before a court considers motions to dismiss or for summary judgment by owners or charterers. Although this has now occurred here at least to a limited extent, there are, as we have already noted, a number of unresolved factual matters.

In *Joo Seng I*, the Court concluded that an expansive definition of the term "carrier" better served the congressional purpose of redressing "the oppressive edge in bargaining power enjoyed by carriers . . . over shippers and cargo interests. . . .". *Nissho-Iwai Co., Ltd. v. Anglomar Supertankers, Limited*, 617 F.2d 907 at 911 (2d Cir. 1980). The focus of that opinion was on which parties were subject to suit as COGSA carriers; it did not address the question of ultimate liability,

## I. *The Revised Factual Background*

Under the Cook/Transamerican voyage charter party dated December 19, 1975, the specific vessel was to be named at a later date. At the time, the Unibulkfir was under a time charter between Unibulk A/S, apparently the ship's owner, and the Daiwa Navigation Co., Ltd. ("Daiwa").[4] On December 22, 1975, Daiwa and Transamerican entered into a standard "Government Form" time charter party "for one time charter trip" under which the Unibulkfir was chartered to Transamerican with the express right to "sublet the vessel". The Unibulkfir was "nominated" as the performing vessel under the Cook/Transamerican charter party on December 29, 1975.

Under Clause 8 of the Transamerican/Daiwa charter, a standard clause contained in most time charter parties, Transamerican assumed responsibility for the loading and discharge of ship's cargo.[5]

"The Captain (although appointed by the owners), shall be under orders and directions of the Charterers as regards employment and agency; and Charterers are to load, stow, trim [and] discharge the cargo at their expense under the supervision of the Captain, who is to sign Bills of Lading for cargo as presented, in conformity with Mate's or Tally Clerk's receipts. See also. Cl. 42."

Clause 42, separately appended to the standard form, provides specific authority for Transamerican or its agents to issue bills of lading on the Captain's behalf.

"It is understood that the master will authorize charterers or their agents to sign Bills of Lading on his behalf, accordance to Mate's receipt provided in conformity with terms of this charter party." [sic]

As noted in *Joo Seng I*, the Cook/Transamerican charter party provided that the vessel was to be loaded by "Charterers' stevedores" and that the cargo was to be discharged by "Receivers' stevedores".[6] The charter party also provided that the Captain was "to call at Charterers' or their agents' office, as requested, and sign Bills of Lading, as presented, without prejudice to this Charter Party." Finally, under Clause 17, Transamerican's agents were to be employed at the loading and discharging ports.

In addition to denying that it assumed any cargo responsibility under the terms of its charter with Daiwa,[7] Transamerican apparently argues that whatever cargo responsibility it did assume was "passed on"

---

and the Court by no means suggested that the identity of the party issuing the bill of lading was not relevant to that question.

4. Defendant Transamerican has made reference to a charter party between Unibulk A/S and Daiwa, and has described it as the prime charter party covering this vessel. The Court has no indication, however, as to the terms of that charter or as to how Unibulk A/S is referred to therein. It is possible that Unibulk is a demise charterer rather than an owner, but the question is not relevant to the disposition of the motions now before the Court.

5. At this point of the opinion, we are concerned only with the relationship between Daiwa and Transamerican. Transamerican, relying on both Clause 41 of its charter party with Daiwa, which provides that "the Master shall supervise stowage of cargo and . . . be responsible for the proper stowage of cargo" and on the phrase "under the supervision of the Captain" in Clause 8, argues that as a sub-charterer it had no cargo responsibility. While the import of Clause 41 to a cargo damage claim is arguable, it seems clear that absent a showing

that the Captain actively interfered with loading or unloading, Clause 8 imposes primary responsibility for the kind of shortage alleged here on the charterer. *See Nichimen Company v. M.S. Farland*, 462 F.2d 319, 330–332 (2d Cir. 1972). Since the extent of the Master's interference cannot on this motion be determined on the basis of the papers currently before us, compare, *Nissho-Iwai Co., Ltd. v. Anglomar Supertankers, Limited, supra*, 617 F.2d at 914–915, we proceed on the assumption that, as between Transamerican and either Daiwa or the vessel's owners, the risk of lost or undelivered cargo falls upon Transamerican.

6. In *Joo Seng I*, the Court concluded that under these provisions, Cook "was responsible for the loading and discharge of the soybean cargo" since it was both charterer and consignee. It now appears, however, that the question of who supervised and carried out the loading and unloading operations *is a disputed question of fact. See* discussion *infra.*

7. *See* note 5, *supra.*

to Cook as a result of the Cook/Transamerican voyage charter. Since Transamerican also claims that it did not issue the bills of lading now held by Joo Seng, the argument is that Transamerican is not subject to suit as a carrier under COGSA, or that if it is so subject, the facts alleged do not support the assertion that Transamerican was in any way responsible for plaintiff's cargo loss.

The parties agree that the three bills of lading covering the soybean shipment were issued "for the master" by Oceans International Corp. ("Oceans") "as agents". Plaintiff claims that Oceans was Transamerican's agent, and that since the bills were thus issued by Transamerican, Transamerican is subject to suit as a COGSA carrier. Moreover, plaintiff points to Clause 17 of the Cook/Transamerican charter and to a letter from the Captain of the Unibulkfir as evidence in support of its assertion that Transamerican actually supervised the loading and discharge of the cargo.[8] Transamerican neither admits nor denies that Oceans was its agent, but suggests instead that Oceans may have had a dual agency capacity, *i.e.*, that it represented both Cook and Transamerican. In either event, Transamerican asserts that since the Captain was required by the Cook/Transamerican charter party to call at the charterers' or their agents' office to sign bills of lading, and since Cook was the charterer under that charter party, the bills involved must have

been signed by Oceans as Cook's agent.[9] Finally, Transamerican challenges plaintiff's reliance on the letter from the Unibulkfir's Captain and relies on Clause 41 of the Transamerican/Daiwa charter party and Cook's obligations under the Cook/Transamerican charter party as evidence that it would not have supervised the loading and/or discharge of the soybean cargo.

## II. *Cook's Motion for Summary Judgment*

COGSA provides that "the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered. . . .". 46 U.S.C. § 1303(6). *See Nissho-Iwai Co., Ltd. v. Anglomar Supertankers, Limited*, 617 F.2d at 911 n. 2 (2d Cir. 1980). The Unibulkfir arrived at its final destination on February 15, 1976, but the complaint in this action was not filed until May 25, 1978. Although at oral argument plaintiff refused to concede that its COGSA claims are time barred, plaintiff offers no support for the proposition that Cook's statute of limitations defense is not properly invoked before this Court. Accordingly, plaintiff's claim against Cook under COGSA is dismissed, and Cook's motion for summary judgment is granted insofar as it relates to plaintiff's

---

8. The letter, a copy of which is appended to plaintiff's Memorandum of Law, is dated March 10, 1977 and is addressed to "Wallem Shipmanagement Ltd." in Hong Kong. It is signed by one "T. A. Rodrigues", who is apparently the Unibulkfir's Captain. Rodrigues states in part:

"all loading and discharging operations were conducted at the instance, and under the supervision of the charterers' (Trans-American) representatives, both at U. S. Gulf and at Indonesian ports. Vessel, however, supervised storage/discharge in respect of safety, stability, draft and trim.

Capt. A. C. Crosbie of Trans-American directed discharging operations, both at Djakarta and a Surabaya, . . . .".

While the Court condones neither the manner in which this document has been presented nor plaintiff's failure to present the party affidavits called for by F.R.Civ.P. 56(e), the Rodrigues letter does lend support to plaintiff's allega-

tions concerning Transamerican's role as well as to plaintiff's contention that material issues of fact exist. *See* discussion *infra*. Of course, the Court reaches no conclusion as to the letter's accuracy or authenticity.

9. Transamerican also points to the fact that the Captain's letter authorizing Oceans to sign bills of lading refers only to the charter party between Daiwa and Unibulk A/S and not to the Transamerican/Daiwa charter as evidence that Transamerican was not involved in the issuance of the bills involved herein. Quite aside from plaintiff's contention that there may be a question as to the authenticity of this reference to the "prime charter", *see* note 4, *supra*, since it is in different type than the rest of the letter, the Court cannot see how such a reference is dispositive of the question whether Oceans acted as Transamerican's agent when it issued the bills of lading.

COGSA claim. *See* discussion of plaintiff's contract claim, *infra.*

### III. *Transamerican's Motion for Summary Judgment or Dismissal*

■ Regardless of the definition of COGSA carrier employed, the responsibilities and authority assumed by Transamerican under its charter with Daiwa belie the assertion that it was not a carrier of the shipment involved. Transamerican's motion to dismiss on the ground that it is not a carrier is denied. Moreover, the dispute between the parties concerning Transamerican's role in both the issuance of the bills of lading and the actual loading and discharge of the soybean cargo make summary judgment particularly inappropriate in this case. If Oceans issued the bills as Transamerican's agents, or if Transamerican requested that the Master authorize Oceans to issue the bills as Cook's agents, then Transamerican may well be accountable to plaintiff absent a showing that the alleged shortage was not caused by its negligence. Even if Transamerican was not involved with the issuing of the bills of lading, it may be liable to plaintiff if its agents in fact negligently supervised the cargo operations.

Transamerican's motion for summary judgment is denied.

### IV. *Plaintiff's Motion for a Stay Pending Arbitration*

Plaintiff now seeks an order staying its claim against both Cook and Transamerican and directing arbitration in New York. The asserted right to arbitration is based on the New York arbitration clause in the Cook/Transamerican charter, which plaintiff claims is incorporated into the bills of lading, and the Joo Seng/Cook sales con-

tract covering the soybean sale.[10] Plaintiff's motion is denied.

■ Plaintiff claims that under *Son Shipping Co., Inc. v. DeFosse Tanghe*, 199 F.2d 687 (2d Cir. 1952), the terms of the Cook/Transamerican charter party are incorporated into the bills of lading, and that as a holder of those bills, plaintiff is entitled to invoke the New York arbitration clause contained in the charter. The rule in this circuit is that a holder of a bill of lading which specifically refers to a charter party and in unmistakable language incorporates the charter party's arbitration section can compel a party to the charter party to arbitrate a dispute which comes within the scope of the arbitration provision. *Import Export Steel Corp. v. Mississippi Valley Barge Line Company*, 351 F.2d 503, 506 (2d Cir.), *reh. denied*, 356 F.2d 109 (2d Cir. 1965). The three bills of lading now held by Joo Seng each provide:

> "All terms, conditions and exceptions as per charter party dated COVERING THIS FIXTURE and any addenda thereto to be considered as incorporated herein as if fully written, anything to the contrary contained in this bill of lading notwithstanding." [sic]

Since there are three charter parties involved in this shipment, the Cook/Transamerican charter, the Transamerican/Daiwa charter, and the charter entered into between Daiwa and Unibulk A/S, the Court cannot, with any degree of certainty, conclude that the above quoted provision specifically refers to the Cook/Transamerican charter.[11] *See Coastal States Trading, Inc. v. Zenith Navigation, S.A.*, 446 F.Supp. 330, 338 (S.D.N.Y.1977); *United States v. Cia Naviera Continental, S.A.*, 202 F.Supp. 698

---

**10.** Plaintiff also relies on footnote 4 of this Court's opinion in *Joo Seng I* as a basis for its asserted right to arbitration. That footnote, which read in part "Plaintiff is encouraged by the Court to consent to a local arbitration", was in response to what appeared to the Court to be a desire on the part of the defendants to arbitrate rather than proceed with this action. At this stage of the litigation, the situation is obviously different, however, and it seems clear

that the footnote conferred no "right" upon the plaintiff.

**11.** Given the factual disputes already described, it is impossible in this motion for the Court to look beyond the face of the bills of lading to extrinsic evidence concerning their issuance as was done in *Amoco Overseas Company v. S.T. Avenger*, 387 F.Supp. 589, 594 (S.D.N.Y.1975) in an effort to shed light on which charter party the parties intended to incorporate.

(S.D.N.Y.1962). Moreover, even if we were to conclude that this provision in fact refers to the Cook/Transamerican charter, it seems clear that a dispute between Joo Seng and either Cook or Transamerican is not within the scope of the arbitration clause contained therein. That clause provides for arbitration in New York of "any dispute . . . between *owners and charterers*. . . ." (emphasis added). The courts of this circuit have consistently distinguished between such language and arbitration clauses providing for arbitration of "any dispute arising . . . out of" a charter. *See e. g., Amstar Corp. v. S.S. Union Australia*, 445 F.Supp. 940, 941 (S.D. N.Y.1978); *Amoco Overseas Co. v. S.T. Avenger*, 387 F.Supp. 589, 593 (S.D.N.Y. 1975). Joo Seng does not, and apparently cannot, claim either that it occupied the status or that it assumed the obligations and privileges of an owner or a charterer, and in the Court's view, the mere fact that plaintiff received the bills of lading from Cook, the shipper and consignee as well as voyage charterer, does not confer on it a right to arbitrate under the Cook/Transamerican charter.

Plaintiff also claims that pursuant to the Joo Seng/Cook sales contract, it has a right to arbitrate its contractual claims against Cook in New York. Although it had earlier appeared to the Court that plaintiff based its claim solely on the bills of lading, it became clear at oral argument that plaintiff is in fact asserting two theories for Cook's liability.[12] The first theory, which seeks to impose liability pursuant to the bills of lading, is time-barred. The second theory seeks to impose liability on Cook as a seller pursuant to the Joo Seng/Cook contract. The Court must thus decide whether the arbitration called for by that agreement is to take place in London, as urged by Cook or in New York.

The sales contract in question contains the following provision as a final paragraph:

"OTHER CONDITIONS: All other terms and conditions of F.O.S.F.A. 24 and North American Grain Charter Party 1973 (NORGRAIN) or Baltimore Form C to apply when not in contradiction with the above."

F.O.S.F.A. 24, a form promulgated by the Federation of Oils, Seeds and Fats Association, Limited, Contract for Canadian and United States of America Soybean Parcels, a copy of which has been furnished the Court by counsel for Cook Industries, Inc., provides in relevant part:

"ARBITRATION: Any dispute arising out of this contract, including any question of law arising in connection therewith, shall be referred to arbitration in London (or elsewhere if so agreed) in accordance with the Rules of Arbitration and Appeal of the Federation of Oils, Seeds and Fats Associations Limited, in force at the date of this contract and of which both parties hereto shall be deemed to be cognizant."

Both Baltimore Form C (a copy of which is contained in 2 B *Benedict on Admiralty*, pp. 8–23, 8–27) and the NORGRAIN form (also reprinted in 2 B *Benedict on Admiralty* 8–49), provide for arbitration in either New York or London with the inapplicable provision to be deleted by the contracting parties. The Joo Seng/Cook sales agreement, however, does not specifically indicate which paragraph is to be considered deleted. The Court must thus interpret this haphazard reference to these standard forms so as to determine how the parties would have intended a controversy such as this to be resolved had they given the matter any real thought at the time they entered into their agreement.

Cook contends that since F.O.S.F.A. specifically provides for arbitration in London unless otherwise agreed, and since there is no evidence of an agreement by the parties designating an alternate site, the arbitration must be held in London. Plaintiff answers largely with arguments of con-

12. The complaint in this action is a standard form admiralty cargo complaint which does not specifically delineate two causes of action. In- deed, the complaint alleges cargo damage rather than shortage.

venience. Although our conclusion unfortunately appears to result in a fragmentation of plaintiff's claims, we are nevertheless constrained to agree with Cook that the site for arbitration of rights under the contract must be London. Since the second and third referenced agreements do not indicate a choice as between London and New York, and since the first referenced agreement, F.O.S.F.A., indicates that the place of arbitration is to be London unless otherwise indicated, in the absence of any other indication we believe that London is the only place which has been designated by the parties as the place of arbitration. Plaintiff's arguments of convenience, while not without appeal at this stage of the litigation, simply do not go to the question of the parties' intent at the time the contract was executed.

*CONCLUSION*

Plaintiff's claim against Cook is stayed pending arbitration in London. All other motions are denied.