**PHILLIPS PETROLEUM COMPANY,**
**Plaintiff-Appellant,**

v.

**MARATHON OIL COMPANY,**
**Defendant-Appellee.**

**No. 85–1623.**

United States Court of Appeals,
Fifth Circuit.

July 23, 1986.

Michael V. Powell, Rain, Harrell, Emery, Young & Doke, Morris Harrell, Dallas, Tex., Don Jemison, Bartlesville, Okl., for plaintiff-appellant.

Robert M. Roller, Graves, Dougherty, Hearon & Moody, Austin, Tex., Daniel J. Sullenbarger, Cypress, Tex., for defendant-appellee.

Before BROWN, REAVLEY and JONES, Circuit Judges.

PER CURIAM:

The issue on appeal is whether a dispute that has arisen between Phillips Petroleum Company and Marathon Oil Company comes within the arbitration clause contained in their contract. Because we find that the dispute is arbitrable, we affirm the order of the district court staying proceedings pending arbitration.

Phillips owns an undivided one-half interest in a contract under which it purchases casinghead gas produced by Marathon from wells in Andrews County, Texas. The contract, entered into in 1944 by predecessors-in-interest of the parties, contains an arbitration clause which provides: "In the event of any dispute or controversy between the parties hereto involving the operations under this contract same shall be settled by arbitration." The parties disagree over (1) whether other contracts that Phillips has entered into have triggered the two "favored nations" clauses in the contract in question, thus entitling Marathon to substantial additional payments for casinghead gas, and (2) whether the proceeds Phillips receives from the sale of sulphur removed from casinghead gas must be included in calculating the price that Marathon receives for casinghead gas, again resulting in additional payment to Marathon. Phillips, after rejecting Marathon's demand for the additional compensation, filed an action seeking a declaration of its rights and obligations under the contract. Marathon thereupon moved to stay proceedings pending arbitration. The district court's granting of the stay, although interlocutory, is appealable, pursuant to 28 U.S.C. § 1292(a)(1). *See Tenneco Resins, Inc. v. Davy Int'l, AG,* 770 F.2d 416, 418 (5th Cir.1985); *Commerce Park at DFW Freeport v. Mardian Constr. Co.,* 729 F.2d 334, 336–37 (5th Cir.1984).

The Federal Arbitration Act, 9 U.S.C. §§ 1–14, establishes a strong national policy favoring arbitration whenever the parties choose that method of resolving their contractual differences. Consonant with that directive, where a contract contains an arbitration clause, there exists a strong presumption that arbitration should not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Houston General Ins. Co. v. Realex Group, N.V.,* 776 F.2d 514, 516 (5th Cir. 1985) (quoting *Wick v. Atlantic Marine, Inc.,* 605 F.2d 166, 168 (5th Cir.1979)). *See AT & T Technology, Inc. v. Communications Workers of America,* — U.S. —, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986).

Phillips contends that the arbitration provision does not encompass the issues in dispute because they are pricing matters, which turn on contract interpretation, whereas the arbitration clause is limited to disputes "involving the operations under the contract." "Operations," as explained by Phillips, refers solely to those physical activities, in the gas plant or on the oil and gas leases, involved in producing casinghead gas. In support of this definition, Phillips points out that "operations" or a form of the word is used elsewhere in the contract only in connection with such physical activities and not in reference to the means or method of setting gas prices. Marathon responds that Phillips' proffered construction artificially restricts the meaning of the term as it is

used in the arbitration provision. We agree. "Operations," standing alone, is sufficiently broad to cover the panoply of rights and obligations of the parties under the contract, and simply because the term is used in more specific contexts where it is also appropriate does not require a conclusion that its meaning in the arbitration provision must be restricted to those contexts. *See, e.g., Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1145 n. 10 (5th Cir.1985). Moreover, if, as Marathon asserts, the "favored nations" clauses have been triggered, then a new contract would be substituted under the terms of the contract here. Thus, numerous segments of the parties' operations, including the physical activities as well as pricing matters, would necessarily be implicated. Because the provision is susceptible of the broad meaning urged by Marathon, we conclude that the district court properly construed the provision in favor of arbitration.

Phillips alternatively argues that the arbitration clause is unenforceable under the Federal Arbitration Act, because the district court made no finding that the contract involved interstate commerce.[1] In its opinion, however, the district court specifically found that federal law governed the arbitrability of the dispute. Inherent in such a finding is that the contract had an effect on interstate commerce. This court has rejected the need for explicit findings of an effect on interstate commerce under the Act where such an effect is obvious from the facts in the case. *E.C. Ernst, Inc. v. Manhattan Constr. Co. of Texas*, 551 F.2d 1026, 1040 & n. 36 (5th Cir.), *rehearing granted in part on other grounds*, 559 F.2d 268 (1977), *cert. denied*, 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978). Phillips and Marathon, both large corporations carrying on interstate and international operations, are each situated in a different state.[2] Phillips has never denied that interstate commerce is implicated by this contract. Remanding to the district court solely to obtain an explicit finding on a matter that is not contested would, as Phillips acknowledged in oral argument, be wasteful, and we decline to do so.

For the foregoing reasons, we AFFIRM.

---

1. Section 2 of the Act provides that a written provision in a "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable...."

2. That this contract was for the sale of intrastate natural gas does not negate, for purposes of determining the applicability of the Federal Arbitration Act, and impact on interstate commerce. By the same token, our decision should in no way undermine the status of the contract with reference to natural gas pricing, the status of which is determined under a different statutory framework.