**NATIONAL IRANIAN OIL COMPANY,**
**Plaintiff-Appellant,**

**v.**

**ASHLAND OIL, INC.,**
**Defendant-Appellee.**

**No. 86–4486.**

United States Court of Appeals,
Fifth Circuit.

May 21, 1987.

Rehearing and Rehearing En Banc
Denied June 22, 1987.

Stephen M. Truitt, Washington, D.C., Jones & Davis, Alex A. Alston, Jr., Jackson, Miss., for plaintiff-appellant.

Wm. F. Goodman, Jr., Jackson, Miss., Howrey & Simon, Keith E. Pugh, Jr., Robert J. Brookhiser, Jr., Washington, D.C., for defendant-appellee.

Before CLARK, Chief Judge,
GOLDBERG and GEE, Circuit Judges.

GOLDBERG, Circuit Judge:
There was an oil company from Iran
whose lawyers devised a neat plan:
To arbitrate a dispute
that Ashland's contract might refute,
the Iranians to the land of cotton ran.
But their clever arbitration plan was
spoiled;

by an Act of Congress, the district court said, it was foiled.

So they take this appeal
to rewrite their first deal.
But their theories are only half-boiled.
To arbitrate in Ole Miss is their prayer.
Inconvenience or waiver makes it fair.
But the contract is clear;
we can't order arbitration here.
Unless agreed, it's Iran or nowhere.

### I.

According to the allegations contained in the pleadings and accompanying memoranda, two Ashland Oil Company (Ashland) subsidiaries, Ashland Overseas Trading Limited (AOTL) and Ashland Bermuda Limited began to use the National Iranian Oil Company (NIOC), an instrumentality of the Islamic Republic of Iran, as their primary supplier of Middle Eastern crude oil in 1973. The parties entered into long term contracts. Amid the maelstrom of chaos and confusion engendered during the Islamic Revolution in Iran, NIOC allegedly repudiated then renegotiated its contracts with Ashland's two subsidiaries on several occasions in 1978 and 1979. On March 11, 1979, the parties allegedly entered into a two-year, nine-month contract, providing that NIOC was to supply AOTL with 150,-000 barrels of crude oil per day. NIOC allegedly repudiated this March contract on April 10, 1979. On April 11, the parties allegedly executed a new contract, providing that NIOC was to supply AOTL with 115,000 barrels of crude per day until December 31, 1979.

On November 12, 1979, following the takeover of the American Embassy in Tehran and the seizure of American hostages on November 4, President Carter banned the importation of all oil from Iran not already in transit. Exec. Order No. 4702, 44 Fed.Reg. 65581 (November 16, 1979). Several cargoes of crude, however, were then en route to AOTL. AOTL received and refined the oil, worth nearly $283,000,-000. Despite NIOC's demand, neither Ashland nor its subsidiaries have rendered payment. Ashland, in essence, contends that it is not responsible for the alleged breaches of its subsidiaries and that NIOC itself breached the March and April agreements.

In accord with the terms of the arbitration clause of the parties' April contract, NIOC appointed an arbitrator to resolve the dispute. Despite the forum selection clause contained in the arbitration provision, Ashland refuses to participate in an arbitral proceeding in Iran because of the danger to Americans. Nor has Ashland agreed to participate in an arbitration elsewhere. NIOC thus brought suit against Ashland in federal district court, and alleged breach of contract in the first three counts of its complaint. In count four of its complaint, NIOC sought to compel arbitration in Mississippi, to have the court appoint an arbitrator and to stay litigation pursuant to the United States Arbitration Act (Act), 9 U.S.C. § 1 *et seq.*

Ashland then filed a counterclaim, alleging tortious interference with and breach of contract by NIOC. NIOC responded to the counterclaim by filing an application that also sought to appoint an arbitrator, to compel arbitration, and to stay litigation. Because the terms of the agreement expressly provided for arbitration in Tehran, the district court found that it lacked the power to order arbitration in Mississippi under section 4 of the Act, and thus it denied NIOC's motion. 641 F.Supp. 211 (S.D.Miss.1986). NIOC appeals from that order.

On appeal, NIOC points to the strong federal policy favoring the private resolution of contract disputes, particularly in the international commercial context, and argues that we should reverse the district court and order arbitration in Mississippi because the parties have "waived" the forum selection clause in the contract. Alternatively, NIOC contends that, because it is now impossible to render performance of the contract's terms, we should sever the forum selection clause from the rest of the arbitration provision and order Ashland to perform the essential part of their bargain, *viz.*, to arbitrate. Finding no merit to these contentions, we affirm the district court's judgment on other grounds. Not only justice and sound policy, but also the

law prevents NIOC from holding Ashland hostage to an agreement not contemplated *ex ante.*

## II.

■ We must first address Ashland's argument that the district court's decision declining to compel arbitration and to stay litigation is not an appealable order under 28 U.S.C. § 1292(a)(1).[1] This contention is without merit.

Ashland bases its argument on the much criticized[2] and archane intricacies of the *Enelow-Ettelson* doctrine. *Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935); *Ettelson v. Metropolitan Life Ins. Co.*, 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942); *see Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955). This murky and swamp-like doctrine, mired in a bog of antiquarian fictions requiring distinction of actions at law from actions in equity, provides that if a party sets up an equitable defense to an action at law, an order of the district court granting or denying a stay of the proceedings is in effect an appealable interlocutory injunction under 28 U.S.C. § 1292(a)(1). *Ettelson*, 317 U.S. at 191–92, 63 S.Ct. at 164–65.

In *Jackson Brewing Co. v. Clarke*, 303 F.2d 844 (5th Cir.), *cert. denied*, 371 U.S. 891, 83 S.Ct. 190, 9 L.Ed.2d 124 (1962), we established a two-part test for determining whether an order granting or denying a stay is appealable:

> An order staying or refusing to stay proceedings in the District Court is appealable under § 1292(a)(1) only if (A) the action in which the order was made is an action which, before the fusion of law and equity, was by its nature an action at law; *and* (B) the stay was sought to permit the prior determination of some *equitable* defense or counterclaim.

*Id.* at 845 (emphasis in original) (citations omitted). *See also Municipal Energy Agency v. Big Rivers Electric Corp.*, 804 F.2d 338, 341 (5th Cir.1986); *Commerce Park at DFW Freeport v. Mardian Construction Co.*, 729 F.2d 334, 336–37 (5th Cir.1984).

Ashland properly concedes that the underlying cause that is the subject of this appeal—an action for breach of contract—is an action at law, thus satisfying the first prong of the *Jackson Brewing* test. Moreover, arbitration proceedings are by nature equitable. *See, e.g., Shanferoke Coal & Supply Corp. v. Westchester Service Corp.*, 293 U.S. 449, 452, 55 S.Ct. 313, 314, 79 L.Ed. 583 (1935); *Municipal Energy Agency*, 804 F.2d at 341. Thus, "[i]t is clearly settled that, when a stay of proceedings is granted or denied in a contract action ... pending arbitration proceedings ... the order falls within the [*Jackson Brewing* ] rule and is appealable." *Teneco Resins, Inc. v. Davy Intern., AG*, 770 F.2d 416, 418–19 (5th Cir.1985) (citations omitted); *see Phillips Petroleum Co. v. Marathon Oil Co.*, 794 F.2d 1080, 1081 (5th Cir.1986); *Houston General Ins. Co. v. Realex Group, N.V.*, 776 F.2d 514, 515 (5th Cir.1985) (collecting cases).

Ashland, however, argues that the second prong of the test is not met here because NIOC seeks to stay its own suit, in count four of the complaint. Ashland would have us conclude that NIOC seeks to stay the litigation based on an *affirmative* assertion of arbitration, not based on an equitable *defense*, and therefore that the interlocutory order of the district court is not appealable.

Ashland relies on *Turkish State Railways Administration v. Vulcan Iron Works*, 230 F.2d 108 (3d Cir.1956). In holding that the plaintiff's attempt to stay litigation pending arbitration was not appealable, the Third Circuit reasoned that "[t]o

---

**1.** 28 U.S.C. § 1292(a)(1) provides in pertinent part that the courts of appeals have jurisdiction over "[i]nterlocutory appeals of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions...."

**2.** *See, e.g., Mar-Len of Louisiana, Inc. v. Parsons-Gilbane,* 732 F.2d 444, 445–47 (5th Cir.1984) (Rubin, J., dissenting).

suggest that a plaintiff may invoke a chancellor's aid to enjoin himself from prosecuting his own lawsuit is a novel doctrine, too unrealistic for serious consideration." *Id.* at 110; *see Jackson Brewing Co.*, 303 F.2d at 846 (citing *Turkish State Railways* with approval in dicta). Ashland's reliance on this case is misplaced. However viable *Turkish State Railways* may be in this circuit, a question we leave for another day, the present case is distinguishable.

NIOC is like Hermaphroditus. Because Ashland responded to NIOC's initial complaint by filing a counterclaim, NIOC is not simply plaintiff *or* defendant, but is simultaneously both plaintiff *and* defendant in the body of the same suit. It is true that NIOC requested arbitration and a stay of the litigation in its complaint. But in response to Ashland's counterclaim, which is by nature an action at law, NIOC filed an application to appoint an arbitrator, to compel arbitration and to stay litigation. It was this application, not the initial complaint, that the district court ruled upon and that is the subject of this appeal. Thus, because NIOC seeks, in part, to compel arbitration and to stay litigation in defense to Ashland's counterclaim, we have jurisdiction to review the district court's interlocutory order denying this motion under 28 U.S.C. § 1292(a)(1).

### III.

Section 4 of the Act provides in relevant part that:

A party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner *provided for in the agreement....* The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration *in accordance with the terms of the agreement.* The hearing and proceedings, under such agreement, *shall be within the*

*district in which the petition for an order directing such arbitration is filed.*

9 U.S.C. § 4 (emphasis added). Section 4 thus facially mandates that two conditions must be met before a district court may compel arbitration: (1) that the arbitration be held in the district in which the court sits; *and* (2) that the arbitration be held in accordance with the agreement of the parties. In this case the forum selection clause, found in Article X of the April contract, provides that "the seat of arbitration shall be in Tehran, unless otherwise agreed by the parties." Rec. at 28. Relying on *Snyder v. Smith*, 736 F.2d 409 (7th Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984), the district court reasoned that the language of Section 4 deprived it of the power to compel arbitration in Mississippi, because to order arbitration in Mississippi would violate the forum selection clause and thus would not be "in accordance with the terms of the agreement." 9 U.S.C. § 4.

In *Snyder*, the Seventh Circuit reversed an order of the district court ordering arbitration in its district in the face of a forum selection clause designating Houston, Texas as the agreed-upon site of any arbitral proceeding. The court reasoned that section 4 mandates that arbitration be compelled only in accord with the terms of the contract, and one "term of the agreement" was the forum selection clause.

The right and duty to arbitrate disputes is purely a matter of contractual agreement between the parties.... An arbitration agreement, including its forum selection clause is a freely-negotiated contract between the parties. Courts must give effect to such freely negotiated forum selection clauses.

*Id.* at 419 (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15–18, 92 S.Ct. 1907, 1916–18, 32 L.Ed.2d 513 (1972)); *see Lafayette Coal Co. v. Gilman Paper Co.*, 640 F.Supp. 1 (N.D.Ill.1986); *Joo Seng Hong Kong Co. v. S.S. Unibulkfir*, 493 F.Supp. 35 (S.D.N.Y.1980); *see also Econo-Car International, Inc. v. Antilles Car Rentals, Inc.*, 499 F.2d 1391, 1394 (3d Cir.

1974) (court is statutorily proscribed by section 4 from ordering arbitration outside its district to comport with forum selection clause providing for arbitration in another district); *Continental Grain Co. v. Dant & Russell, Inc.*, 118 F.2d 967 (9th Cir.1941) (same); *Cardona Tirado v. Shearson Lehman American Express, Inc.*, 634 F.Supp. 158, 161 (D.P.R.1986) (same); *Couleur International, Ltd. v. Saint-Tropez West, Division of California Industries, Inc.*, 547 F.Supp. 176, 177–89 (S.D.N.Y.1982) (same).

Apparently contrary to some other courts, we have not taken such a literal approach to the two part mandate of section 4. In *Dupuy-Busching General Agency, Inc. v. Ambassador Ins. Co.*, 524 F.2d 1275 (5th Cir.1975) (per curiam), a party to a contract containing a forum selection clause providing for arbitration in New Jersey brought suit in Mississippi requesting the court to enjoin arbitration. The district court ordered arbitration in New Jersey, and we affirmed the order of the district court compelling arbitration outside its own district. We did so, however, in accord with the forum selection clause. Noting the tension in the two conditions of section 4, we reasoned that "where a party seeking to avoid arbitration brings a suit for injunctive relief in a district court other than that in which arbitration is to take place ... the party seeking arbitration may assert its section 4 right to have the arbitration performed in accordance with the terms of the agreement." *Id.* at 1278; *see also Continental Grain*, 118 F.2d at 969 (ordering arbitration in its own district despite forum selection clause designating New York as the situs of arbitral proceedings, because the plaintiff effectively waived the forum selection clause by bringing suit in Oregon seeking to compel arbitration in New York).

Thus, *Dupuy-Busching* suggests that the language of section 4 need not be applied literally, that there may be some cases in which district courts are empowered to compel arbitration notwithstanding the parties' contractually established forum or outside of the district in which the courts sit. *See Municipal Energy Agency*,

804 F.2d at 344. But this is not such a case. By bringing suit in a district other than the districts designated in the forum selection clause, the plaintiff in *Dupuy-Busching* in effect had waived the right to its bargain. Contrary to NIOC's contention, there has been no such waiver here.

NIOC contends that since it is not seeking to compel arbitration in Iran, it has waived its right to the benefit of the forum selection clause. Further, NIOC argues that Ashland also has waived the "benefit" of such clause by refusing to participate in an arbitral proceeding in Tehran or elsewhere. NIOC therefore concludes that, because the putative waivers render the forum selection clause nugatory, we are free to order arbitration in Mississippi without contravening the contract's terms. This argument rings hollow.

■ In the first place, as NIOC now concedes, it has no right to an order compelling arbitration in Tehran. When the United States adhered to the Convention on the Recognition and Enforcement of the Foreign Arbitral Awards (Convention), 21 U.S.T. 2517, T.I.A.S. No. 6997 (1970) (implemented by chapter 2 of 9 U.S.C.), U.S. courts were granted the power to compel arbitration in signatory countries. *See* 9 U.S.C. § 206. But Iran is not one of the 65 nations that have adhered to the Convention, *see* note following 9 U.S.C.A. § 201 at 208–09 (Supp.1986), and thus no American court may order arbitration in Iran. Convention Articles I(1), I(3); Declaration of the U.S. upon accession (Declaration), reprinted in 9 U.S.C.A. at 213 n. 43 (Supp. 1986); *see Sedco, Inc. v. Petroleos Mexicanos Mexican National Oil Co. (Pemex)*, 767 F.2d 1140, 1145 (5th Cir.1985); *Ledee v. Ceramiche Ragno*, 684 F.2d 184, 185–86 (1st Cir.1982). Consequently, NIOC has no right that is recognized under U.S. law to compel an arbitration in Iran.

■ Because a waiver is a voluntary relinquishment of a known right, *see, e.g., Watkins v. Fly*, 136 F.2d 578, 580 (5th Cir.) (on petition for rehearing), *cert. denied*, 320 U.S. 769, 64 S.Ct. 80, 88 L.Ed. 459 (1943); *Restatement (Second) of Contracts*

§ 84, comment b (1981), and because NIOC has nothing that it could relinquish in a U.S. court, NIOC could not have waived its "right" to the benefit of the forum selection clause. Moreover, Ashland contends and NIOC does not dispute that NIOC has attempted, and still may be attempting, to compel arbitration through the court system in Iran. Thus, NIOC has not waived its contractual right to arbitration in Iran. NIOC, at most, simply and pragmatically has recognized that it has no legal right in the U.S. courts to compel arbitration in Tehran.

## IV.

NIOC also argues that, because it may be "inconvenient" for Ashland to participate in an arbitral proceeding in Iran, this impossibility (or commercial impracticability) renders the forum selection clause without force. Appellant's brief at 23. NIOC, relying on *Snyder*, 736 F.2d at 419, and *The Bremen*, 407 U.S. at 10–12, 92 S.Ct. at 1913–14, therefore asserts that the forum selection clause should be severed and Ashland compelled to perform the essential term of the bargain, *viz.*, to participate in an arbitral proceeding (in Mississippi). This syllogism too is fatally flawed.

■ In *The Bremen*, 407 U.S. at 10–12, 92 S.Ct. at 1913–14, the Supreme Court held, in the context of an international admiralty dispute, that forum selection clauses must be strictly enforced, unless the enforcement would be "unreasonable," or unless the resisting party could show "countervailing" or "compelling" reasons why it should not be enforced. But the forum selection clause at issue in *The Bremen* did not relate to the choice of *situs* in an arbitral proceeding, rather it related to the parties' contractual choice of arbitration as opposed to litigation to resolve its disputes. Thus, in *Sam Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679 (5th Cir.1976), we held that the test in *The Bremen* was inapposite respecting the enforcement of the choice of situs expressed in an arbitration agreement. In *Reisfeld*, a U.S. company argued that a forum selection clause designating Belgium as the situs of

arbitration should not be enforced because "it is so unreasonable that it either vitiates the arbitration clause altogether or requires a transfer to a more neutral situs." *Id.* at 680. We held that the forum selection clause contained in an arbitration provision must be enforced, even if unreasonable. A forum selection clause establishing the situs of arbitration must be enforced unless it conflicts with an "explicit provision of the Federal Arbitration Act." *Id.* at 680–81.

> Under the Act, a party seeking to avoid arbitration must allege and prove that the arbitration clause itself was a product of fraud, coercion, or "such grounds as exist at law or in equity for the revocation of the contract."

*Id.* at 681 (quoting 9 U.S.C. § 2) (citing *Prima Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)). *See Southland Corp. v. Keating*, 465 U.S. 1, 16 n. 11, 104 S.Ct. 852, 861 n. 11, 79 L.Ed.2d 1 (1984); *Spring Hope Rockwool, Inc. v. Industrial Clean Air, Inc.*, 504 F.Supp. 1385, 1389–90 (E.D.N.C. 1981); *Joo Seng Hong Kong*, 493 F.Supp. at 42; *see also Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519–20, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974) (footnote omitted) ("the agreement of the parties ... to arbitrate any dispute arising out of their international commercial transaction is to be respected and enforced by the federal courts in accord with the explicit provisions of the Arbitration Act."). NIOC does not assert that it has been a victim of fraud or coercion, and its assertion of inconvenience or impossibility fails as a "legal ground" for vitiating the freely chosen forum selection clause.

■ Under traditional principles of contract law, NIOC's argument that the political atmosphere in Iran renders arbitration there impossible or impracticable certainly supplies an adequate predicate for finding the forum selection clause unenforceable and without effect. *See, e.g. Restatement (Second) of Contracts*, at § 264; U.C.C. 2–615 & comment 4; *see generally* A. Farnsworth, *Contracts* § 95 (1982). "Where only part of the obligor's perform-

ance is impracticable his duty to render the remaining part is unaffected if ... it is still practicable for him to render performance that is substantial." *Restatement (Second) of Contracts* at § 270; *see, e.g., Net Realty Holding Trust v. Franconia Properties, Inc.,* 544 F.Supp. 759, 769 (E.D.Va. 1982). But impracticability is an argument upon which NIOC may not rely.

In order to assert the doctrine of impossibility or commercial impracticability, the party wishing to assert such a defense must meet two conditions. First "[t]he affected party must have no reason to know at the time the contract was made of the facts on which he [or she] relies." *Restatement (Second) of Contracts* at § 266, comment a; *see, e.g., Eastern Airlines, Inc. v. McDonnell Douglas Corp.,* 532 F.2d 957, 988, 991–92 (5th Cir.1976); *Waldinger Corp. v. CRS Group Engineers, Inc.,* 775 F.2d 781, 786 (7th Cir.1985); *Roth Steel Products v. Sharon Steel Corp.,* 705 F.2d 134, 149–50 (6th Cir.1983); *Asphalt International, Inc. v. Enterprise Shipping Corp.,* 667 F.2d 261, 265 (2d Cir.1981). That NIOC—an instrumentality of the Islamic Republic of Iran—could not reasonably have foreseen in April 1979 that an American entity might find it impracticable to participate then or in the near future in an arbitral proceeding in Tehran defies credulity.

By January 16, 1979, the Shah had departed, and by February 1, the Ayatollah Khomeini had returned triumphantly to Iran. On February 14, the American Embassy was attacked for the first time, killing one Iranian civilian employee, wounding an American Marine, and taking some 100 Americans hostage, including Ambassador Sullivan, for approximately two hours. In short, by April 1979, when the contract was executed, the revolutionary government was in place—the same government that took power largely by "mobilizing millions of Iranians against an America equated with satan." B. Rubin, *Paved With Good Intentions: The American Experience and Iran* 255 (1980). Thus, it simply is unimaginable that NIOC, part of the revolutionary government, could not reasonably have foreseen that

Tehran would become a forum in which it is undisputably impossible for Americans to participate in any proceedings. *See, e.g., McDonnell Douglas Corp. v. Islamic Republic of Iran,* 758 F.2d 341, 345–46 (8th Cir.1985) (taking judicial notice of the grave difficulties that would confront an American entity were it forced to litigate a dispute in Iran, and collecting cases).

Second, a party may not rely on the doctrine of impossibility or impracticability "[i]f the event is due to the fault of the ... [party] himself [or herself]." *Restatement (Second) of Contracts* at § 261, comment d; *see, e.g., W.R. Grace & Co. v. Local Union 759,* 461 U.S. 757, 767 & n. 10, 103 S.Ct. 2177, 2184 & n. 10, 76 L.Ed.2d 298 (1983); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. B.C. Rogers & Sons, Inc.,* 696 F.2d 1113, 1115 (5th Cir.1983). Simply put, "a party may not affirmatively cause the event that prevents ... [the] performance." *Nissho-Iwai Co. v. Occidental Crude Sales, Inc.,* 729 F.2d 1530, 1540 (5th Cir.1984). Yet, as part of the revolutionary Government, NIOC certainly bears responsibility for creating the chain of events making it impossible for an American entity reasonably to travel to and to engage in quasi-judicial proceedings in Iran. Thus, NIOC cannot assert the doctrine of impossibility.

Even were NIOC able to rely on the fact that it is now impossible for Ashland to arbitrate in Iran, thus vitiating the forum selection clause, NIOC must show that the venue provision is severable from the rest of the arbitration agreement. Whether the agreement to arbitrate is entire or severable turns on the parties' intent at the time the agreement was executed, as determined from the language of the contract and the surrounding circumstances. *See, e.g., Prospero Associates v. Burroughs Corp.,* 714 F.2d 1022, 1026–27 (10th Cir.1983); *Pollux Marine Agencies, Inc. v. Louis Dreyfus Corp.,* 455 F.Supp. 211, 219 (S.D.N.Y.1978). NIOC must therefore show that the essence, the essential term, of the bargain was to arbitrate, while the situs of the arbitration was merely a minor consideration. *See Restatement*

*(Second) of Contracts* at § 184, comment a; § 185(1) & comment b.

■ But the language of the standard form document—drafted by NIOC—belies any such argument. Not only did NIOC choose Tehran as the site of any arbitration, but the contract also provides that Iranian law governs the interpretation and rendition of any arbitral awards. The arbitration agreement also provides that, should one of the parties fail to appoint an arbitrator or should the two arbitrators fail to agree on a third arbitrator, "the interested party may request the *President of the Appeal Court of Tehran* to appoint the second arbitrator or the third arbitrator as the case may be." Rec. at 27 (emphasis added). Indeed, the contract expressly provides that the entire agreement is to be interpreted by reference to Iranian law. The language of the contract thus makes self-evident the importance of Iranian law and Iranian institutions to NIOC. Therefore, the document plainly suggests that the situs selection clause was as important to NIOC as the agreement to resolve disputes privately through arbitration. The language of the contract demonstrates that the parties intended the forum selection clause and the arbitral agreement to be entire, not divisible.

Finally, even were the forum selection clause severable, we are still not informed how the parties intended to arbitrate in *Mississippi.* NIOC contends, somewhat disingenuously, that because Ashland's corporate offices are in Kentucky, Jackson is far more convenient to Ashland than to NIOC. But NIOC does not dispute Ashland's allegation that NIOC ran to Mississippi because it is one of the few jurisdictions with a six-year, rather than four-year, limitations period for contracts' claims. Thus, by filing when it did in Mississippi, NIOC was able to assert its claim before the statute of limitations had run, and simultaneously to argue that that statute of limitations had run on Ashland's counterclaim, which had accrued earlier.

■ Notwithstanding considerations of "convenience," one cannot reasonably argue that the parties' contract contemplates arbitration in Mississippi. The contract's provision that arbitration was to be in Tehran "unless otherwise agreed" suggests that, were Iran to become inconvenient or unacceptable to one or both parties, no other forum was to be available unless mutually agreed upon. Because arbitration is a creature of contract, we cannot rewrite the agreement of the parties and order the proceeding to be held in Mississippi. *See, e.g., AT & T Technologies, Inc. v. Communication Workers,* 475 U.S. 643, ——, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); *International Association of Machinists and Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co., Inc.,* 812 F.2d 219, 220 (5th Cir.1987); *Williams v. E.F. Hutton & Co.,* 753 F.2d 117, 119 (D.C.Cir.1985).

NIOC could have chosen to negotiate a forum selection clause with a situs in any one of the 65 nations that are signatories to the Convention, thereby permitting extraterritorial enforcement by U.S. courts. It also could have selected any one of 50 states in this country in which we could have compelled Ashland to arbitrate. But it did not. It selected a situs that was unenforceable *ab initio,* and we have no statutory or equitable mandate that allows us to redraft the agreement premised on convenience of the parties *ex post. See Prima Paint,* 388 U.S. at 404 n. 12, 87 S.Ct. at 1806 n. 12 (purpose of Act "was to make arbitration agreements as enforceable as other contracts, but not more so."); *Robin v. Sun Oil Co.,* 548 F.2d 554, 557 (5th Cir.1977) (courts may not redraft the parties' agreement in the absence of clear and convincing evidence of mutual mistake).

## V.

■ NIOC points to the weighty congressional policy favoring the use of arbitration if the parties have contractually agreed to resolve their disputes in this manner. *See, e.g., Dean Witter Reynolds, Inc. v. Boyd,* 470 U.S. 213, 219–22, 105 S.Ct. 1238, 1242–43, 84 L.Ed.2d 158 (1985); *Southland Corp.,* 465 U.S. at 10, 104 S.Ct. at 858 (1984); *Moses H. Cone Memorial*

*Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 22 n. 7, 23, 103 S.Ct. 927, 940 n. 7, 941, 74 L.Ed.2d 765 (1983). This policy acquires special significance in the international context where, because of transnational fora and concomitant conflicts of laws problems, arbitration appears a more inviting forum. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624–27, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985); *Scherk*, 417 U.S. at 515–16, 94 S.Ct. at 2455–56; *The Bremen*, 407 U.S. at 12–14, 92 S.Ct. at 1915; *see generally* Quigley, *Accession by the United States to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, 70 Yale L.J. 1049 (1961). Thus, there is a strong, congressionally ordained presumption in favor of arbitrability. Therefore, we have repeatedly held that "arbitration should not be denied 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Phillips Petroleum*, 794 F.2d at 1081 (quoting *Wick v. Atlantic Marine, Inc.*, 605 F.2d 166, 168 (5th Cir. 1979)). At the same time, a corollary "of th[is] principle[ ] is that the duty to submit a dispute to arbitration arises from contracts, therefore a party cannot be compelled to arbitrate a dispute if he has not agreed to do so." *Lodge No. 2504*, 812 F.2d at 221; *see also* H.R.Rep. No. 96, 68th Cong., 1st Sess. 1 (1924) ("Arbitration agreements are purely matters of contract, and the effect of the bill is simply to make the contracting party live up to his agreement."); H.R.Rep. No. 91–702, 91st Cong., 2d Sess. 6 (1970) (bill implementing the Convention has the same purpose). Thus, NIOC's appeal to congressional policy will not suffice to transform the plain words of the parties' agreement to arbitrate in Tehran, Iran to arbitrate in Jackson, Mississippi.

There is also a countervailing policy concern evoked by this case. When the United States adhered to the Convention, it expressly chose the option available in Article I(3), to "apply the Convention, on the basis of reciprocity, to the recognition and enforcement of *only* those awards made in the territory of another Contracting State." Declaration (emphasis added). While the House and Senate Committee reports do not inform us as to the purpose of adopting this reservation, its purpose seems obvious. Concerned with reciprocity, Congress must have meant only to allow signatories to partake of the Convention's benefits in U.S. courts and thus to give further incentives to non-signatory nations to adhere to the Convention. Were we now to order arbitration in Mississippi, despite the forum selection clause designating Tehran into an agreement as the site of arbitration, we would do great violence to this obvious congressional purpose. Were we to order arbitration in the U.S. in the face of a forum selection clause designating a non-signatory forum, which was unenforceable *ab initio*, the non-signatory would have little reason to leave the Hobbesian jungle of international chaos for the ordered and more predictable world of international commercial law.

### Conclusion

NIOC now seems to prefer the relative quiescence of the distant Mississippi to the proximate turbulence of the Persian Gulf. But there is neither doctrine nor policy that supplies NIOC a polestar with which to circumnavigate the plain language of its forum selection clause and thereby avoid its initial, unequivocal and contractually chosen course. The case is thus AFFIRMED and REMANDED for further proceedings consistent with this opinion.