INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, LODGE NO. 2504, Plaintiffs-Appellants,

v.

INTERCONTINENTAL MANUFACTUR-ING COMPANY, INC., Defendant-Appellee.

No. 86–1752
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

March 12, 1987.

Rod Tanner, James M. Whitton, McGee, Tanner, Coble & Whitton, Ft. Worth, Tex., for plaintiffs-appellants.

Thomas A. Graves, Dallas, Tex., for defendant-appellee.

Before CLARK, Chief Judge, GARWOOD, and HILL, Circuit Judges.

CLARK, Chief Judge:

The plaintiff in this case, Lodge No. 2504 of the International Association of Machinists and Aerospace Workers, AFL–CIO ("Lodge No. 2504"), appeals the district court's grant of the defendant's motion for summary judgment. We affirm.

## I.  Background

The defendant, Intercontinental Manufacturing, Inc. ("Intercontinental") produces shell casings for explosive devices at its plant in Garland, Texas. Lodge No. 2504 is the certified bargaining representative for some of Intercontinental's employees. On March 14, 1985, Intercontinental discharged four of those employees for violation of a company rule prohibiting "bringing, possessing or using intoxicating liquors ... on company premises." Three of the employees, Owens, Forbis and Foster, admitted they had beer in their possession in the company's parking lot after their shift had ended. The fourth employee, Gandera, admitted having beer in his possession in the parking lot during his lunch hour.

Lodge No. 2504 submitted a written grievance to Intercontinental contesting the discharges on the ground that the "punishment is too severe for [the] alleged offense." Intercontinental denied the union's request for reinstatement of the employees and refused to submit the dispute to arbitration.

Intercontinental asserted the contract did not require arbitration of the dispute. The contract lists the rule on alcohol as a "Group III" rule and provides that an "employee may be discharged for violation of Group III rules." The same article of the contract provides that:

Discipline exercised by the company pursuant to this article will be subject to grievance and arbitration only to the extent of whether or not the act was committed for which the employee was disciplined and not for mitigation of any penalty assessed by the company under this article.

Lodge No. 2504 asserts that the rule prohibiting alcohol was not intended to apply to non-work areas and non-work time. The union asserts that the intended meaning of the rule is an arbitrable issue because the arbitration clause of the contract states, "Any grievance that cannot be settled between the union and management in accordance with the provisions of the foregoing sections may be submitted to an independent arbitrator...."

The main thrust of the union's argument is that the contract requires that the company have good cause to discharge an employee, even when the employee admittedly violated a Group III rule. The union points to the contract language that an "employee *may* be discharged for violation of a Group III rule," (emphasis added) combined with later language in the same article stating "No employee shall be discharged, demoted, or otherwise disciplined without good and sufficient cause." Also, the article on management rights states "the company shall have the right to decision, subject to procedures and conditions herein agreed upon, concerning ... discharge for *proper cause*." (emphasis added).

In short, the union contends that the contract does not exclude discharges for violations of Group III rules from the requirement that discharges be for good cause and the provision that unresolved grievances are arbitrable. Based on the contract and the long established presumption of arbitrability, *Steel Workers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960), the union asserts that the dispute should be submitted to an arbitrator.

## II. Arstitrability

In the recent case of *AT & T Technologies v. Communications Workers,* —— U.S. ——, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), the Supreme Court reiterated the principles that govern the arbitrability of grievances under collective-bargaining agreements. The cornerstone of these principles is that the duty to submit a dispute to arbitration arises from contracts, therefore a party cannot be compelled to arbitrate a dispute if he has not agreed to do so. *Id.* at 1418.

The second principle is that the question of whether the parties agreed to arbitrate a dispute is to be decided by the court, not the arbitrator. *Id.* The third principle is that courts should not determine the merits of the underlying grievance, even if it appears to be frivolous. *Id.* at 1419. The court is only to determine whether the grievance is arbitrable.

The fourth and final principle is that when a contract contains an arbitration clause, there is a presumption of arbitrability unless the court determines "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id.,* quoting *Warrior & Gulf,* 363 U.S. at 583, 80 S.Ct. at 1352–53. *See also International Chemical Workers v. Day & Zimmermann,* 791 F.2d 366, 368–69 (5th Cir.1986).

This case is similar to *AT & T Technologies.* In that case, the company laid off workers based on the company's determination that there was a lack of work. The union contended the layoffs violated the contract because, according to the union, there actually was not a "lack of work." The contract excluded management decisions regarding the termination of employment from the arbitration clause. Another provision, however, established the order for layoffs when a lack of work made layoffs necessary. The union argued that an actual lack of work must exist in order for layoffs to be excluded from the arbitration clause. The company argued that only the order of layoffs was arbitrable.

The Supreme Court held that the court, not the arbitrator, must interpret the agreement and determine whether the parties intended to arbitrate layoffs caused by the company's determination that a lack of work existed. Similarly, in this case the court must determine whether the parties intended to arbitrate discharges based on possession of beer in non-work areas during non-work hours. The Court must determine whether the company cannot discharge employees who violate Group III rules unless the company also has "good cause." If appropriate, the arbitrator must then determine whether good cause existed.

The district court's construction of the contract is a proper one. The contract does not support the union's argument that the company must have "good cause" in addition to a violation of a Group III rule before discharges are permissible. The contract lists three groups of rules and states the type of discipline that management may impose for violation of rules in each group. The lists are followed by a section limiting arbitrability "to ... whether or not the act was committed for which the employee was disciplined and not for mitigation of any penalty assessed." Clearly the rules were listed with the permissible disciplinary action in order to allow the company to impose that discipline without a separate showing of "good cause." *See, Amalgamated Meat C. & B., L. 540 v. Neuhoff Bros. Packers, Inc.,* 481 F.2d 817, 820 (5th Cir.1973). Any other interpretation makes the listing of rules in groups with three levels of permissible disciplinary action, a pointless exercise.

The remaining issue is whether the parties intended to arbitrate the specific type of discharge in this case. Again, the union's interpretation of the rule would defeat its purpose. Under the union's interpretation employees could drink alcohol in the parking lot during their lunch hour and between shifts, leaving them just as debilitated as if they had consumed the alcohol inside the plant building. The rule provides a clear ban on alcohol and drugs

anywhere on the "company premises." To overcome the clear language of the rule, the union must support its allegation that the parties did not intend the rule to apply to non-work hours and non-work areas.

■ A defendant moving for summary judgment can rely on the absence of evidence to support an essential element of the plaintiff's case. *Fontenot v. UpJohn Co.*, 780 F.2d 1190, 1195 (5th Cir.1986). The plaintiff cannot successfully oppose the defendant's motion by making conclusory allegations without asserting facts to substantiate them. *Id.* There is no indication in the contract or the record that the parties intended to arbitrate the discharges involved in this case. The presumption of arbitrability is overcome by the language and overall structure of the contract. The district court correctly granted the defendant's motion for summary judgment.

### Conclusion

For the foregoing reasons, we affirm the judgment of the district court granting the defendant's motion for summary judgment.

AFFIRMED.