**Harmon R. MILLER, Stanley Engineering Co., Inc., and Hollie S. Stanley, Jr., Plaintiffs,**

v.

**GTE CORPORATION and GTE Mobilnet Inc., Defendants.**

**Civ. A. No. H–88–1176.**

United States District Court, S.D. Texas, Houston Division.

June 24, 1991.

D.C. Toedt, III, Arnold White & Durkee, Houston, Tex., for defendants.

Lester L. Hewitt, Pravel, Gambrell, Hewitt, Kimbell & Krieger, Houston, Tex., for plaintiffs.

## MEMORANDUM AND ORDER

RAINEY, District Judge.

The Court has considered Defendants' Motion for Summary Judgment against Plaintiffs Stanley and Stanley Engineering (Stanley) (Instru. # 41, 42). After reviewing the record and applicable law, the Court finds that Defendants' motion should be GRANTED.

### I. *Relevant Facts*

Defendant GTE Mobilnet (GTEM) is in the business of providing cellular mobile radio telephone service in the Houston area. It is also a subsidiary of GTE Corporation, Co–Defendant. Plaintiff Stanley Engineering is a private engineering consulting firm, and Hollie M. Stanley is an engineer with the firm. (Instru. # 39). Plaintiff Miller is a former employee of GTEM.

In 1986, Defendant GTEM funded a research project to invent a transportable cellular mobile radio telephone cell site (CMR). Plaintiff Miller and Hollie Stanley, representing Stanley Engineering, worked on the project. (Instru. # 39). When the project was completed, a GTEM attorney prepared and filed a patent application that listed Harmon Miller and Hollie Stanley as co-inventors. GTEM then signed a licensing agreement with a company called Fibrebond, which would manufacture the CMR. The agreement was later mutually terminated because they experienced problems with the product's design.

In his claims against GTE, Plaintiff Miller alleged that he should have been paid for the value of "his" property right in the patented product. The Court previously disposed of Mr. Miller's claims, finding that he had no interest in the invention because he was employed by GTEM at the time of his work on the project, and he worked on the invention at GTEM's direction. (Instru. # 14).

Stanley claims that GTE "misappropriated" his property right in the invention when it signed the "exclusive" licensing agreement with Fibrebond. Stanley also alleges claims under theories of quasi-contract, unjust enrichment, breach of fiduciary duty and conversion. (Instru. # 39).

GTE does not dispute that Stanley is a joint owner of the invention. (Instru. # 53). Further, GTE urges that it has not, in any way, deprived Stanley of his joint interest in the invention.

### II. *Summary judgment standard*

■ Rule 56(c) provides that "[summary] judgment shall be rendered if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The moving party has the burden of showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir.1988). The burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact. *See Int'l Ass'n of Machinists & Aerospace Work-*

ers, Lodge No. 2504 v. Intercontinental Mfg. Co., 812 F.2d 219, 222 (5th Cir.1987). But, a defendant who moves for summary judgment may rely on the absence of evidence to support an essential element of the plaintiff's case. Id.

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. See Celotex, 106 S.Ct. at 2552–53. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing the existence of a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Assertions unsupported by facts are insufficient to oppose a motion for summary judgment. Williams v. Weber Management Serv., 839 F.2d 1039, 1041 (5th Cir.1987). There must be evidence giving rise to reasonable inferences that support the nonmoving party's position. St. Amant v. Benoit, 806 F.2d 1294, 1297 (5th Cir.1987). Mere allegations are insufficient. Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc., 831 F.2d 77, 79 (5th Cir.1987).

In considering a motion for summary judgment, the Court must view the evidence through the prism of the substantive evidentiary burden. Anderson, 106 S.Ct. at 2513. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. Id. at 2513. The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). Summary judgment is inappropriate if the evidence before the Court, viewed as a whole, could lead to different factual findings and conclusions. Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

### III. Misappropriation/Conversion

Defendants urge that Stanley's claims that GTE somehow stole his interest must fail, because federal law provides that each joint owner may use the invention as desired, without consent from other owners. (Instru. # 42).

The law is perfectly clear on this issue. 35 U.S.C. § 262 states:

> In the absence of any agreement to the contrary, each of the joint owners of a patent may make, use or sell the patented invention without the consent of and without accounting to the other owners.

See also Willingham v. Lawton, 555 F.2d 1340, 1344 (6th Cir.1977) (the nature of a patent is such that co-owners are at the mercy of each other). A co-owner of a patent can even grant a license to a third party without consent of the other owners and neither the co-owner-licensor nor the third-party licensee is liable to the other owners. Id. Thus, licensing agreements, such as that between GTE and Fibrebond, are not improper or illegal.

Stanley contends, however, that the following terms of the licensing agreement effectively denied his rights to the invention:

> GTE Mobilnet hereby grants to the Fibrebond Corporation the exclusive right to manufacture and market the Minute Man Mobile Cell Site . . .

(Instru. # 45, Exh. 1). Defendants assert that the use of the word "exclusive" does not mean that they divested Stanley of his interest, which they cannot do by law. Instead, they merely gave Fibrebond the exclusive right, at the time, to use GTE's undivided interest in the invention for manufacturing and marketing purposes. GTE simply agreed with Fibrebond that no other entity would be licensed to use its interest.

Plaintiff offers no compelling argument to the contrary. The law provides that Stanley's interest exists, regardless of what GTE does with its interest. Only Stanley may contract his rights away. GTE's contract with a third party did not deprive Stanley of his interest.

Case law acknowledges that unlimited use of a patent by one co-owner could effectively destroy its value to the other co-owner. Willingham, 555 F.2d at 1344. In

this case, Stanley chose complacency, while GTE chose to actively use its interest. But, GTE's use is not improper.

For the same reasons, GTE has not been unjustly enriched. In fact, GTE suffered financial losses because the final product was a failure and did not fulfill its original intended purpose. (Instru. # 53).

### IV. *Duty*

■ Stanley urges that Defendants breached their "employer-employee relationship," and their duty "to deal in good faith." (Instru. # 39 at 10–11). To find a duty to Stanley, the Court must look at the parties' relationship. Plaintiff admits, in his pleadings, that he had no agreement with Defendants. (Instru. # 39). Stanley and his engineering firm were simply private consultants that provided services and billed for such services by invoice. (Instru. # 42, Exh. D). In response to Defendants' Motion for Summary Judgment, Stanley contends that "there is a legal issue as to who has the obligation to whom." (Instru. # 45 at 8). Stanley offers no legal or factual basis to support his allegation, however. Mr. Stanley even admitted, when deposed, that he had no written *or* oral agreement that would obligate GTE to protect his personal patent rights. (Instru. # 42, Exh. F). When asked "what basis [he had] for assuming, taking it on faith, that GTE was going to do something to protect [his] personal patent rights," he responded, "I don't know that I have any basis for that." (Instru. # 42, Exh. F). The record clearly shows that the parties dealt with each other on an arms-length basis, as services were needed, and Defendants had no duty to protect Stanley's rights.

### V. *Quasi-contract*

■ As discussed above, Stanley had no express contractual relationship with Defendants. Thus, he urges that the Court "imply" a contract. In addition to the above remarks made during Mr. Stanley's deposition, the following was discussed:

Q: Do any of your other clients take any steps to protect your personal patent rights for the work that you do for them?

A: I don't believe that any of my other clients have applied for a patent in my name before.

Q: Have you ever asked any of your clients to do that for you?

A: No.

Q: Have any of them ever suggested doing that for you?

A: No.

Q: Have you ever heard of clients voluntarily seeking patent protection on behalf of their outside contractors?

A: Have I ever heard of it? No.

(Instru. # 42, Exh. F).

Obviously, Stanley's inclusion as co-inventor on the patent application was merely a generous act by GTE's patent attorney. He included Mr. Stanley's name upon Mr. Miller's request. (Instru. # 39). Thus, the Court finds no reason to imply a contract that would obligate GTE to somehow protect Stanley's rights. There is no legal reason for doing so.

Accordingly, the Court ORDERS that Defendants' Motion for Summary Judgment (# 41, 42) is GRANTED on all of Plaintiffs' remaining claims. It is further ORDERED that Defendants submit a proposed Final Judgment within thirty (30) days from the date of this Order.

Because this matter may be appealed from a Final Judgment, Plaintiff Miller's Motion for Certification of Issues for Interlocutory Appeal (Instru. # 54) is now MOOT.