Gerald L. **GRUDZINSKAS** Plaintiff

v.

**HOMESIDE LENDING, INC.; J. Gary Massey, Substituted Trustee; James E. Lambert; Isabel Hanna; J. Tayloe Simmons, Jr.; John S. Grant, III, Chancellor Defendants**

No. 3:00–CV–556WS.

United States District Court, S.D. Mississippi, Jackson Division.

Jan. 9, 2004.

Gerald Grudzinskas, Pro se, c/o Carl Wilson, Rome, GA, for Gerald Grudzinskas, plaintiff.

James E. Lambert, James E. Lambert, Attorney, James W. Newman, IV, Newman & Newman, Jackson, for Homeside Lending, Inc., J. Gary Massey, substituted trustee, James E. Lambert, J. Tayloe Simmons, Jr., defendants.

### MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before this court are the motions for summary judgment submitted by defendants Homeside Lending, Inc. ("Homeside"); J. Gary Massey ("Massey"); James E. Lambert, Attorney–at–Law, ("Lambert"); and separately by the defendant J. Tayloe Simmons, Attorney–at–Law. By their motions, all pursued under Rules 56(b) [1] and (c),[2] Federal Rules of Civil Pro-

---

**1.** Rule 56(b), Federal Rules of Civil Procedure, provides:

    **(b) For Defending Party.** A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a

cedure, these defendants ask this court to award them a judgment against plaintiff, Gerald L. Grudzinskas, ("Grudzinskas") because, say defendants, plaintiff's complaint has neither a legal nor any factual basis. Thus, relying upon the teachings of *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and its progeny, the defendants ask this court to dismiss plaintiff's complaint in its entirety.

This lawsuit is one of several actions taken by the plaintiff Gerald L. Grudzinskas to prevent a judicial foreclosure against his former homestead located at 320 Hebron Hill Drive, Brandon, Mississippi. Plaintiff initiated an action in the United States Bankruptcy Court for the Southern District of Mississippi; purported to appeal the dismissal of his bankruptcy action to the United States Court of Appeals for the Fifth Circuit; and filed a related lawsuit and the instant lawsuit before the United States District Court for the Southern District of Mississippi; all in an unsuccessful attempt to thwart the judicial foreclosure filed by defendants Homeside and Massey, Substituted Trustee in the Chancery Court of Rankin County, Mississippi.

Plaintiff's *pro se* complaint urges this court to intervene and remove the judicial foreclosure case from the Chancery Court of Rankin County, Mississippi, to this court, and to enjoin the foreclosure sale. According to plaintiff's complaint, defendants have violated the plaintiff's constitutional right to equal protection; breached a contract; collected multiple benefits by using falsified documents and non-existent addresses "on the plaintiff's Veterans and Disability entitlements;" acted under color of law to deprive the plaintiff of his constitutional rights; embezzled, stolen, and defrauded; inflicted intentional emotional distress; violated the Truth–in–Lending Act; violated the Consumer Protection Act; and engaged in deceptive trade practices, racketeering and civil conspiracy.

Although plaintiff is "pro se," plaintiff relies upon his "Attorney-in-fact," J. Carl Wilson. Wilson is the plaintiff's son-in-law, who persists, in spite of having been told by other courts to cease his "representation," in trying to serve as plaintiff's legal counsel. Plaintiff has submitted no evidence to show that he is suffering from any mental incapacity that would prevent him from pursuing this cause of action in his own right. Neither has plaintiff shown that anyone has been authorized to act in his place by legal document and/or any other court authority.

Plaintiff Gerald L. Grudzinskas personally made one early appearance in this court in regard to the motion to stay the Rankin County Chancery Court proceeding and has made no other appearance herein. J. Carl Wilson has made a number of personal appearances in this court claiming to be the duly appointed and authorized representative of Grudzinskas. This court continually has admonished J. Carl Wilson to cease attempts to represent Grudzinskas before this court. This court continually has admonished J. Carl Wilson

summary judgment in the party's favor as to all or any part thereof.

2. Rule 56(c), Federal Rules of Civil Procedure, provides in pertinent part:

(c) **Motion and Proceedings Thereon.** The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

to cease the act of signing pleadings filed in this civil action for and on behalf of Grudzinskas. This court, as at least two others, has found that the actions of the plaintiff's son-in-law J. Carl Wilson constitute the unauthorized practice of law in the State of Mississippi.

Relative to plaintiff's claims and defendants' attacks on such, this court is persuaded that all of plaintiff's claims are unfounded. Accordingly, this court grants defendants' motion for summary judgment and fully and finally dismisses this action. The court's reasoning is set out below.

## I. FACTUAL BACKGROUND FOR THE INSTANT ACTION

### A. The Deed Of Trust

On February 19, 1987, plaintiff Grudzinskas and his then wife, Isabel Grudzinskas, executed and delivered a Deed of Trust Note (promissory note) on a standard Veteran's Administration form evidencing an indebtedness to Rankin County Bank in the sum of $80,000.00. That same day of February 19, 1987, the pair secured the Deed of Trust Note by executing and delivering a Deed of Trust in favor of Rankin County Bank. The Deed of Trust also was on a standard Veteran's Administration form for deeds of trust.

The Deed of Trust was signed by both Mr. and Mrs. Grudzinskas before a duly authorized and acting notary public, whose acknowledgment is on the recorded instrument. The document then was filed for record in the office of the Chancery Clerk of Rankin County at Brandon, Mississippi, being recorded in Deed of Trust Book 601 at page 397. The Deed of Trust pledged the Grudzinskas' homestead as collateral for the loan. The real property is legally described as Lot 32, Hebron Hill Subdivision, recorded in Plat Cabinet B at Slot 1, Rankin County, Mississippi. At the time the mortgage loan was made to Grudzinskas and his wife, the real property was commonly known as 144 Hebron Hill, Brandon, Mississippi. At sometime subsequent to the making of the mortgage loan, the real property address was changed by the United States Post Office from 144 Hebron Hill to 320 Hebron Hill Drive. So, the real property now is known as 320 Hebron Hill Drive, Brandon, MS 39042.

On February 27, 1987, Rankin County Bank sold the indebtedness owed by Grudzinskas and his wife to Mortgage Corporation of the South and assigned the Deed of Trust which secured the Deed of Trust Note to Mortgage Corporation of the South by instrument recorded in the office of the Chancery Clerk of Rankin County at Brandon, Mississippi, in Deed of Trust Book 603 at page 169. Mortgage Corporation of the South later merged with BancBoston Mortgage Corporation. This corporation subsequently merged with the defendant Homeside. Homeside is now the owner and holder of the Deed of Trust Note and Deed of Trust executed by Grudzinskas and his wife.

### B. The Judicial Foreclosure

Although Mr. And Mrs. Grudzinskas made their mortgage payments from April 1, 1987, to December 1, 1997, they made no mortgage payments from December 1, 1997, to the date of the judicial foreclosure authorized by the Rankin County Chancery Court. Nevertheless, they continued to reside in the real property located at 320 Hebron Hill Drive, Brandon, Mississippi.

On April 27, 1998, Homeside gave its first notice of foreclosure by certified mail to the Grudzinskases. Additionally, by letter dated June 2, 1998, Massey, the Substituted Trustee, gave the Grudzinskases notice of the beginning of foreclosure procedures, including the principal balance due on the loan and the amount necessary

to bring the loan current. By letter dated June 16, 1998, Massey, the Substituted Trustee, provided the Grudzinskases a copy of the Substituted Trustee's Notice of Sale, thereby giving them notice of the impending foreclosure sale scheduled to take place on July 21, 1998, between the hours of 11:00 a.m. and 4:00 p.m.

### C. The Bankruptcy Litigation

On July 21, 1998, in order to avoid the foreclosure, plaintiff Gerald L. Grudzinskas filed a "Petition of Bankruptcy" initiating a Chapter 13 bankruptcy case in the United States Bankruptcy Court ("Bankruptcy Court") for the Southern District of Mississippi, Case No. 9803696JEE ("Bankruptcy Case"). The Petition reflects that Carl Wilson, the plaintiff's son-in-law, was the "Preparer" of the petition. An Automatic Stay [3] was entered by the Bankruptcy Court. However, inasmuch as Grudzinzkas was unable to show the proper eligibility for bankruptcy relief, the Bankruptcy Court entered its Order Dismissing the Case on October 9, 1998.

On October 14, 1998, Massey, the Substituted Trustee, notified Grudzinskas that the foreclosure proceedings would begin again. By letter dated November 2, 1998, Massey, the Substituted Trustee, provided Grudzinskas a copy of the Substituted Trustee's Notice of Sale, thereby giving

him notice of the impending foreclosure sale on December 15, 1998.

### D. The Plaintiff Appeals To The Fifth Circuit

On October 16, 1998, the plaintiff improperly filed a "Notice of Appeal to a Court of Appeals" ("Notice") with the United States Court of Appeals for the Fifth Circuit. The Notice states that plaintiff appeals "to the UNITED STATES COURT OF APPEALS for the 5th Circuit from an order of dismissal entered (by the United States Bankruptcy Court) in this action on the 9th day of October, 1998." The Fifth Circuit sent everything back to the Bankruptcy Court where the Notice was file-stamped as of October 23, 1998.

### E. The Plaintiff Files a Civil Action in Federal Court

After filing the foregoing Notice of Appeal to the Fifth Circuit, the plaintiff then filed a civil action styled *Gerald L. Grudzinskas, pro-se, non-lawyer v. First American Corporation/Deposit Guaranty Bank; United States Veterans Administration; J. Tayloe Simmons; Isabel Grudzinskas; Homeside Lending/Rankin County Bank; and J. Gary Massey, Attorney,* bearing Civil Action No. 98-cv-732, in the United States District Court for the Southern District of Mississippi, Jackson Division. The

---

**3.** Title 11 U.S.C. § 362 provides in pertinent part that, "(a) [e]xcept as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; (4) any act to create, perfect, or enforce any lien against property of the estate; (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; ...."

docket sheet pertaining to that case reveals the following:

(a) On November 10, 1998, Grudzinskas filed his "MOTION FOR STAY PENDING APPEAL (EMERGENCY STAY)". Then, on November 18, 1998, Grudzinskas filed his "AMENDED MOTION FOR STAY PENDING APPEAL" and a "MOTION TO EXPEDITE."

(b) On November 30, 1998, the United States Magistrate Judge entered his Order denying the plaintiff's MOTION FOR STAY PENDING APPEAL.

(c) On December 11, 1998, plaintiff signed and filed with this court his MOTION FOR SUBSTITUTION OF PARTY, wherein he requested that J. Carl Wilson be substituted as plaintiff [3:98–cv–732BN].

(d) On June 28, 1999, this court entered its Order denying the substitution of J. Carl Wilson as a party plaintiff in the place of Grudzinskas. *See* Court File [3:98–cv–732BN] (the case subsequently was transferred to Judge Tom S. Lee).

(e) On July 8, 1999, plaintiff and his purported representative filed his MOTION FOR SUBSTITUTION OF PARTY (AMENDED), again requesting that Wilson be substituted as the plaintiff.

(f) On August 6, 1999, this court entered another Order again denying Wilson the right to be substituted as a party plaintiff in the place of Grudzinskas.

(g) On December 11, 1998, the plaintiff filed a MOTION FOR TEMPORARY RESTRAINING ORDER/INJUNCTION.

(h) On or about March 10, 1999, J. Carl Wilson filed a document styled "PLAINTIFF'S BRIEF," which document covered a laundry list of grievances, but failed to cover the merits of the appeal from the Bankruptcy Court.

(i) On May 7, 1999, Wilson filed a document styled "MOTION FOR CRIMINAL INDICTMENT(S) BY SUMMARY JUDGMENT OR 'GRAND JURY' and MOTION FOR 'SUSPENSION OF THE RULES.' "

(j) On October 6, 1999, United States District Court Judge Tom S. Lee entered a Memorandum Opinion and Order in Civil Action No. 3:98–cv–732, dismissing the case. Judge Lee specifically addressed the matter of J. Carl Wilson in that Opinion, ruling that Wilson had no authority to represent Grudzinskas as an attorney at law or as his attorney in fact. The Final Judgment dismissing the case was entered on October 13, 1999, and was not appealed by Grudzinskas.

### F. The Rankin County Chancery Court Litigation

On January 6, 2000, Homeside and Massey, Substituted Trustee, filed their suit for judicial foreclosure of the property in question in the Rankin County Chancery Court. The case was styled *Homeside Lending, Inc. and J. Gary Massey, Substituted Trustee v. Gerald Lee Grudzinskas and Isabel Grudzinskas,* bearing Civil Action Number 47,362. Grudzinskas was served with process and made his appearance in the civil action. On February 10, 2000, Grudzinskas, along with his so-called attorney in fact, J. Carl Wilson, filed a response to the complaint, alleging that the deed of trust in dispute was guaranteed by the Veterans Administration and that the plaintiffs willfully breached the guidelines.[4]

---

4. The assertion that the defendants had not followed proper procedure is not in accord with the statute governing home mortgage foreclosures of VA-guaranteed loans which was in effect at the time Grudzinskas purchased his home, Title 38 U.S.C. § 1820(a)(6), which provided in pertinent part that such foreclosures were to be conducted by the note

On March 14, 2000, the Rankin County Chancery Court, Judge John Grant, presiding, entered an Order disqualifying J. Carl Wilson from representing Grudzinskas as an attorney in fact, or in any other manner, in the civil action.

On June 26, 2000, the Rankin County Chancery Court entered its Partial Summary Judgment granting Homeside the right to conduct a judicial foreclosure and the terms upon which the sale was to be conducted. The sale was set for August 4, 2000, at 1:00 p.m.

The judicial foreclosure sale was conducted by the court-appointed master on August 4, 2000. On September 18, 2000, a hearing was held in the Rankin County Chancery Court and the court entered its Final Judgment confirming the sale of the property to a third party purchaser. Grudzinskas was notified of each and every hearing date and the judicial foreclosure sale date. Grudzinskas, however, made no attempt to appear or to contest the foreclosure sale or the confirmation hearing. The Final Judgment of the Rankin County Chancery Court was not appealed to the Mississippi Supreme Court and the time for appeal has long since expired.

### G. Plaintiff Files the Instant Lawsuit

■ On July 31, 2000, Grudzinskas, once again through Carl Wilson, filed the instant case, naming as defendants Homeside; Massey; Lambert; Chancellor John S. Grant, III; Attorney J. Tayloe Simmons; and Isabel Hanna, as part of a

continuing attempt to avoid the foreclosure sale of his home. In a rambling complaint wherein Grudzinskas apparently thought this court had appellate jurisdiction over the Rankin County Court's actions, he demanded that the United States District Court intervene and remove the Chancery Court Civil Action to this court because it had granted the lien and note holder permission to proceed with foreclosure. Pursuant to a motion to enjoin the foreclosure proceeding in state court, this court entered its first Order in this matter, finding that the instant case was subject to the well established "Rooker–Feldman" doctrine.[5] *See Rooker v. Fidelity Trust Company,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) (the jurisdiction of the District Court "is strictly original"); and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983) ("a United States District Court has no authority to review final judgments of a state court in judicial proceedings"). This court noted that the plaintiff's recourse regarding his contentions that a state court improperly ordered a foreclosure sale was to submit the issue to the appellate courts of the State of Mississippi, and not to appeal to federal court.

■ This court explained that there are two requirements for application of the "Rooker–Feldman" doctrine: first, the plaintiff must have been a party to a final judgment in state court judicial proceed-

and lien holder in accordance with the laws of the state in which the property is located. *See Rank v. Nimmo,* 677 F.2d 692, 697 (9th Cir.), *cert. denied,* 459 U.S. 907, 103 S.Ct. 210, 74 L.Ed.2d 168 (1982).

5. The Rooker/Feldman doctrine holds that federal district courts lack jurisdiction to entertain collateral attacks on state judgments. A federal complainant cannot circumvent this jurisdictional limitation by asserting claims

not raised in the state court proceedings or claims framed as original claims for relief. If the district court is confronted with issues that are "inextricably intertwined" with a state judgment, the court is "in essence being called upon to review the state-court decision," and the originality of the district court's jurisdiction precludes such a review. *See Liedtke v. State Bar of Texas,* 18 F.3d 315, 317–18 (5th Cir.1994).

ings, *Johnson v. De Grandy,* 512 U.S. 997, 114 S.Ct. 2647, 2654, 129 L.Ed.2d 775 (1994); *Johnson v. Odom,* 901 F.Supp. 220, 223 (W.D.La.1995). Secondly, the plaintiff's federal complaint must seek "what in substance would be an appellate review of the state judgment(s) in a United States District Court." *Id.* (quoting *Johnson,* 114 S.Ct. at 2654). In other words, even if the plaintiff does not expressly seek review of state court judgments, the "Rooker–Feldman" doctrine applies if the federal court is confronted with issues that are "inextricably intertwined" with a state court judgment and the court is in essence being called upon to review the state court decision. *Davis v. Bayless,* 70 F.3d 367, 375 (5th Cir.1995).

This court then explained to Mr. Wilson that he could not represent Grudzinskas as his "attorney-in-fact," noting that several courts already had warned Mr. Wilson that he would be engaging in the unauthorized practice of law in violation of Mississippi Code Ann. § 73–3–55.[6] This court further explained to Mr. Wilson that the Fifth Circuit prohibits non-attorney representatives from appearing in court on behalf of *pro se* litigants. *Thomas v. Estelle,* 603 F.2d 488, 489 (5th Cir.1979); *Guajardo v. Luna,* 432 F.2d 1324, 1324 (5th Cir.1970).

▆ Next, this court granted the motion to dismiss filed on behalf of the defendant John S. Grant, III, Chancellor for the Chancery Court of Rankin County, Mississippi, Twentieth District, specifically

granting dismissal of the plaintiff's complaint on the ground that the plaintiff's claims were barred by the doctrine of absolute judicial immunity. It is well established that judges are absolutely immune from liability for judicial acts that are not performed in clear absence of all jurisdiction, however erroneous the act and however evil the motive. *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 1105–07, 55 L.Ed.2d 331 (1978). Judicial officers are entitled to absolute immunity from claims for damages arising out of acts performed in the exercise of their judicial functions. *Graves v. Hampton,* 1 F.3d 315, 317 (5th Cir.1993). The alleged magnitude of the judge's errors, the mendacity of his acts, and/or the logic of his reasoning are all irrelevant. *See Young v. Biggers,* 938 F.2d 565, 569 n. 5 (5th Cir.1991). "Judges have absolute immunity not because of their particular location within the Government but because of the special nature of their responsibilities." *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 2914, 57 L.Ed.2d 895 (1978).

Ultimately, this court conducted a hearing on the following motions: (a) Isabel Hanna's motion to dismiss; (b) plaintiff's motion to strike defendant Hanna's motion to dismiss; (c) plaintiff's motion to extend discovery; (d) the motions for summary judgment filed by defendants Homeside Lending, Inc., J. Gary Massey and James E. Lambert; and (e) the motion for summary judgment filed by the defendant Simmons. Grudzinskas, failed to appear

---

6. Miss.Code Ann. § 73–3–55 provides in pertinent part: "[i]t shall be unlawful for any person to engage in the practice of law in this state who has not been licensed according to law. Any person violating the provisions of this section shall be deemed guilty of a misdemeanor, and, upon conviction, shall be punished in accordance with the provisions of section 97–23–43. Any person who shall for fee or reward or promise, directly or indirectly, write or dictate any paper or instrument of writing, to be filed in any cause or proceeding pending, or to be instituted in any court in this state, or give any counsel or advice therein, or who shall write or dictate any bill of sale, deed of conveyance, deed of trust, mortgage, contract, or last will and testament, or shall make or certify to any abstract of title or real estate other than his own or in which he may own an interest, shall be held to be engaged in the practice of law...."

or send legal representation. Instead, Carl Wilson appeared on behalf of the plaintiff, once again purporting to represent Grudzinskas. Wilson admitted that he was not licensed to practice law in the State of Mississippi or elsewhere. This court entered two Orders to Show Cause, the first directing Grudzinskas to show good cause for his failure to serve process on the defendant Isabel Hanna, and the second directing Grudzinskas to appear and to explain why the case should not be dismissed for his failure to prosecute his claims.

Grudzinskas failed to appear as directed. Instead, he filed a response to the Order to Show Cause, claiming to be disabled due to numerous ailments which he says prevent him from representing himself. Grudzinskas provided no affidavits or any other evidence to support his assertion that he was unable to handle his own legal affairs before this court. Attending the Show Cause hearing were J. Walter Newman, attorney for the defendant Tayloe Simmons, and James E. Lambert, attorney for Homeside Lending, Inc., and J. Gary Massey.

Inasmuch as Grudzinskas had not served the defendant Isabel Hanna with process within 120 days of filing his complaint as is required under Rule 4(m)[7] of the Federal Rules of Civil Procedure, this court found that her dismissal as a party in this action was warranted, particularly when Grudzinskas failed to show good cause in order to avoid dismissal. Thus, there remained before this court only the defendants Homeside Lending, Inc., J. Gary Massey, James E. Lambert, and attorney Tayloe Simmons, all of whom had submitted motions for summary judgment. This court found these motions to be well taken and they were granted for the reasons that follow.

## II. THE STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Hirras v. National R.R. Passenger Corporation,* 95 F.3d 396, 399 (5th Cir.1996) (quoting Rule 56(c)[8] of the Federal Rules of Civil Procedure). In ruling on a motion for summary judgment, the court is not to make credibility determinations, weigh evidence, or draw from the facts legitimate inferences for the movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Rather, "it is the province of the jury to access the probative value of the evidence." *Kennett–Murray Corporation v. Bone,* 622 F.2d 887, 892 (5th Cir.1980). "Summary judgment can be granted only if everything in the record demonstrates that no genuine issues of material facts exist." *Id.* It is improper where the court merely believes it is un-

---

7. Federal Rule of Civil Procedure 4(m) provides as follows regarding the time limit for service: "[i]f service of the summons and complaint is not made upon a defendant within a hundred and twenty days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effectuated within a specific time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period ...." The Fifth Circuit holds that the federal rules require dismissal of a defendant who has not been served within one hundred and twenty days after the complaint is filed unless "good cause" is shown. *McDonald v. United States,* 898 F.2d 466, 467 (5th Cir.1990).

8. See footnote 2.

likely that the non-moving party will prevail at trial. *National Screen Service Corporation v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir.1962). However, the facts that are irrelevant or unnecessary to a decision are "non-material" and do not prevent summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265 (5th Cir.1987).

Summary judgment is mandated in any case where a party fails to establish the existence of an element essential to the case and on which the party has the burden of proof. *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Thus, Rule 56(c) further requires that the Court enter summary judgment if the evidence favoring the non-moving party is not sufficient for the trier of fact to enter a verdict in the non-moving party's favor. *See Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512; *Exxon Corporation v. Burglin*, 4 F.3d 1294, 1297 (5th Cir.1993).

When the moving party has challenged the non-movant's case under Rule 56(c), the opposing party must present more than a metaphysical doubt about the material facts in order to preclude the grant of summary judgment. *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In response to a motion for summary judgment, the non-moving party is required to respond with specific proof demonstrating a triable issue of fact as to each of the elements required for establishment of the claim or claims asserted. *Washington v. Armstrong World Industries*, 839 F.2d 1121, 1122–23 (5th Cir.1988).

### III. *ANALYSIS*

A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202. Unsubstantiated or conclusory assertions that a fact issue exists will not suffice. *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993); *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir.1992). The nonmovant "must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *Krim*, 989 F.2d at 1442.

In the instant case Grudzinskas has presented no supporting affidavits nor any authority in support of his claims. Grudzinskas' response shows clearly that the only reason he filed the instant complaint was to stop a legal judicial foreclosure which had been ordered by the Rankin County Chancery Court. Grudzinskas has attempted no discovery, has issued no subpoenas for documents, and has made no attempt to take any depositions.

The defendants who have moved for summary judgment in this case have the initial burden of showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir.1988). Inasmuch as Grudzinskas has presented nothing to show that the defendants were involved in anything other than a legitimate judicial foreclosure, this court can discern nothing more than the total absence of a genuine issue of material fact. The burden is not on the defendants in this case to produce the evidence themselves which shows the absence of a genuine issue of material fact. *International Association of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Manufacturing Company*,

812 F.2d 219, 222 (5th Cir.1987). Instead, the defendants may rely on the absence of evidence supporting the essential elements of the plaintiff's case in support of their motion for summary judgment. *Id.*

First, we examine Grudzinskas' claim that defendants conspired to interfere with his civil rights as prohibited by Title 42 U.S.C. § 1985. Subsection 3 of § 1985 concerns the acts of two or more persons conspiring to deprive any person of certain civil rights. *Holdiness v. Stroud,* 808 F.2d 417, 424 (5th Cir.1987). Section 1985(3) provides, in pertinent part: "[i]f two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more conspirators."

▮▮▮ Thus, in order to state a claim under § 1985(3) in the instant case, Grudzinskas must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, either directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *United Brotherhood of Carpenters & Joiners of America v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3355–57, 77 L.Ed.2d 1049 (1983); *Hilliard v. Ferguson,* 30 F.3d 649, 652–53 (5th Cir.1994). Grudzinskas also must assert "some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Hilliard,* 30 F.3d at 653. Even if Grudzinskas has made some of these assertions in his complaint, he has made no showing by affidavit or otherwise to support any allegation of race or class based discrimination.

Grudzinskas also claims violation of his constitutional right to equal protection. The United States Supreme Court has recognized an equal protection claim in the context of a single-member class where the plaintiff alleges intentional treatment which is different from others similarly situated, and where there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 563–64, 120 S.Ct. 1073, 1074, 145 L.Ed.2d 1060 (2000). However, in order to succeed on such a claim, Grudzinskas must establish that the defendants irrationally and intentionally singled him out for dissimilar treatment. *Id.* Grudzinskas has made no such showing.

▮▮▮ Grudzinskas also purports to assert a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Reduced to their simplest terms, the essential elements of a RICO claim are: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise. *Delta Truck & Tractor, Inc. v. J.I. Case Company,* 855 F.2d 241, 242 (5th Cir.1988), *cert. denied,* 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989). However, the only pattern of activity asserted is the defendants' attempt to conduct a lawful foreclosure sale of the property in question.

Clearly, Grudzinskas' claim is actually a collateral attack on the validity of the foreclosure sale and the related state court orders, and makes no true RICO claim whatsoever. As previously noted, this court lacks subject matter jurisdiction to review a final state court decision arising out of a judicial proceeding unless a federal statute specifically authorizes such review. *District of Columbia Court of Appeals v. Feldman,* 103 S.Ct. at 1319 (federal courts lack jurisdiction "over challenges to state court decisions ... arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional"); and *Rooker v. Fidelity Trust,* 44 S.Ct. at 150; *see also Weekly v. Morrow,* 204 F.3d 613, 615 (5th Cir.2000) (federal courts lack jurisdiction to review, modify, or nullify final orders of state courts). Moreover, Grudzinskas cannot circumvent this jurisdictional limitation by asserting claims not raised in the state court proceedings or claims framed as original claims for relief. If the district court is confronted with issues that are "inextricably intertwined" with a state judgment, the court is "in essence" being called upon to review the state court decision. *United States v. Shepherd,* 23 F.3d 923, 924 (5th Cir.1994).

Relative to defendant Simmons, the facts offered to this court show that each and every action taken by Simmons in the premises was done in his capacity as an attorney for a party in litigation. There are no facts before this court requiring an investigation and/or immediate suspension and/or disciplinary action against Simmons. The allegations in the complaint filed by Grudzinskas and/or J. Carl Wilson in this civil action against Simmons are deemed frivolous.

Plaintiff's remaining claims have earned a similar pronouncement. Plaintiff has presented no proof to show breach of contract, embezzlement, fraud, intentional infliction of emotional distress, deceptive trade practices, racketeering, civil conspiracy or violation of the Consumer Protection Act.[9]

## CONCLUSION

Therefore, based on the foregoing, this court finds the motions of the defendants for summary judgment in the instant case to be well taken and they are granted. The above styled and numbered cause is hereby fully and finally dismissed.

**9.** Section § 813(a) of the Consumer Credit Protection Act, Title 15 U.S.C. § 1692k (a), provides in pertinent part that, "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—(1) any actual damage sustained by such person as a result of such failure; (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."