# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CA-00438-SCT

*TIMOTHY HILLHOUSE AND REBECCA HILLHOUSE*

*v.*

*CHRIS COOK CONSTRUCTION, LLC, AND CRESS REALTY GROUP, INC.*


| | |
|---|---|
| DATE OF JUDGMENT: | 03/30/2020 |
| TRIAL JUDGE: | HON. STEVE S. RATCLIFF, III |
| TRIAL COURT ATTORNEYS: | BRIAN AUSTIN HINTON |
| | ROBERT DAVIS HOUSE |
| | THOMAS McILWAIN WRIGHT, JR. |
| | CLYDE X. COPELAND |
| | FRANK RUSSELL BRABEC |
| | MATTHEW WILLIAM VANDERLOO |
| | ANDREW ROBERTS NORWOOD |
| | JOHN B. MACNEILL |
| | RONALD EARL STUTZMAN, JR. |
| | MICHAEL STEPHEN MACINNIS |
| | PATRICK M. TATUM |
| | WILLIAM LOCK MORTON, III |
| | MICHAEL WINSTON RUTLEDGE |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | BRIAN AUSTIN HINTON |
| | THOMAS McILWAIN WRIGHT, JR. |
| | ROBERT DAVIS HOUSE |
| ATTORNEYS FOR APPELLEES: | CLYDE X. COPELAND |
| | FRANK RUSSELL BRABEC |
| | JAMES MATTHEW TYRONE |
| | MATTHEW WILLIAM VANDERLOO |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 09/30/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Timothy and Rebecca Hillhouse entered into a contract with Chris Cook Construction for the construction of their home. The contract contained an arbitration provision mandating that arbitration be conducted before a forum that was unavailable at the time the contract was executed. The trial court entered an order compelling arbitration and appointing an arbitrator. Because the forum was a contract requirement, the arbitration provision is unenforceable, and appointing an arbitrator requires courts to reform the contractual agreement between the parties. This Court therefore reverses the trial court's order compelling arbitration and remands the case for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2.     On November 28, 2018, the Hillhouses filed a complaint against a number of defendants, including Chris Cook Construction (CCC), asserting negligence, breach of warranty, and breach of contract regarding the design and construction of their home and drainage system. They alleged that their lot and home had flooded, causing property damage. On January 10, 2019, CCC filed its motion to compel arbitration and its answer and defenses.

¶3.     The Hillhouses and CCC executed a contract on September 10, 2013, for the construction of the Hillhouses' home. That contract contained an arbitration provision.[1] The

---

[1]The parties agree that the contract is a construction contract of the type to which Mississippi Code Section 11-15-101 to -142 (Rev. 2019), the Mississippi construction arbitration statutes, generally apply.

arbitration provision provided that "[a]ll claims, disputes and other matters in question, arising out of or related to this Contract or the breach thereof shall be submitted to arbitration before the Southern Arbitration and Mediation Association upon demand by either party to the dispute." CCC admits that the Southern Arbitration and Mediation Association (SAMA) ceased to exist in 1996.

¶4.     After a January 22, 2020 hearing, the trial court granted CCC's motion to compel arbitration.  It found that a valid agreement to arbitrate existed and appointed an arbitrator pursuant to Mississippi Code Section 11-15-109 (Rev. 2019).  The Hillhouses filed a Mississippi Rule of Civil Procedure 59 motion to alter or amend the judgment, arguing that arbitration should have been denied.  The trial court denied their motion.  The Hillhouses appeal, arguing that 1) the contract does not contain a valid and enforceable arbitration agreement; 2) this case is controlled by ***Covenant Health & Rehabilitation v. Estate of Moulds ex rel. Braddock***, 14 So. 3d 695 (Miss. 2009), and the trial court therefore erred by denying their Rule 59 motion; and 3) CCC waived any right to arbitration.

## ANALYSIS

*1.     Standard of Review*

¶5.     This Court applies a de novo standard of review to a trial court's decision to grant or deny a motion to compel arbitration.  ***Moulds***, 14 So. 3d at 701.  This case also presents an issue of first impression in statutory interpretation.  "'The interpretation of a statute is a question of law, and the standard of review on appeal is de novo.'"  ***Dancy v. State***, 287 So.

3

3d 931, 935–36 (Miss. 2020) (quoting *Rex Distrib. Co., Inc. v. Anheuser-Busch, LLC*, 271 So. 3d 445, 449 (Miss. 2019)).

## 2. Mississippi Construction Arbitration Statutes

¶6.     Mississippi Code Sections 11-15-101 through -143 apply specifically to arbitration agreements found in certain construction contracts. The parties to an applicable construction contract "may include in a written contract a provision for the settlement by arbitration of any controversy thereafter arising between them relating to such contract . . . . Such agreement or provision shall be valid, enforceable and irrevocable without regard to the justiciable character of the controversy." Miss. Code Ann. § 11-15-103 (Rev. 2019).[2] A party to such an agreement may apply to the court

> for an order directing the parties to proceed with arbitration in accordance with the terms of such agreement or provision. If the court finds that no substantial issues exists as to the making of the agreement or provision, it shall grant the application. If the court shall find that a substantial issue is raised as to the making of the agreement or provision, it shall summarily hear and determine such issue and shall, consistent with such determination, grant or deny the application.

Miss. Code Ann. § 11-15-105(1) (Rev. 2019).[3]

---

[2]This is similar to the Federal Arbitration Act (FAA), which provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2 (West).

[3]This is similar to the FAA provision that provides that parties to such contract may petition a court for an "order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C.A. § 4 (West). Further,

> [t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue,

¶7. The construction statutes further provide that

> If an agreement or provision for arbitration provides a method for the appointment of arbitrators this method shall be followed. In the absence thereof, or if the agreed method fails or for any reason cannot be followed, or if an arbitrator who has been appointed fails or is unable to act and his successor has not been duly appointed, the court, on application of a party to such agreement or provision, shall appoint one or more arbitrators.

Miss. Code Ann. § 11-15-109 (Rev. 2019).[4] Like the FAA, the Mississippi statutes provide

for arbitration procedures that are to be followed, unless otherwise provided by the parties'

agreement. *See* Miss. Code Ann. §§ 11-15-111 to -143 (Rev. 2019). Interpreting Section 11-

15-109 is an issue of first impression.

## 3.    *Arbitration Caselaw*

---

> the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

*Id.*

[4]This is similar to the FAA provision that provides:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire . . . .

9 U.S.C.A. § 5 (West).

¶8.     This Court has recognized that "the use of arbitration to resolve disputes finds favor under federal and state law." *Moulds*, 14 So. 3d at 698.  While doubts are resolved in favor of arbitration under the FAA, applicable state law contract defenses may invalidate an arbitration agreement.  *Id.* at 698–99.

> Our law requires this Court to accept the plain meaning of a contract as the intent of the parties if no ambiguity exists. *I.P. Timberlands Operating Co. v. Denmiss Corp.*, 726 So. 2d 96, 108 (Miss. 1998). Furthermore, "[c]ontracts are solemn obligations and the Court must give them effect as written." *Id.* We agree with the U.S. Supreme Court that, "we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002).

*B.C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So. 2d 483, 487 (Miss. 2005).  "The U.S. Supreme Court has stated that, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.'" *Id.* at 487–88 (quoting *AT & T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)).  Moreover, "a court should not become a party to redrafting or reforming agreements." *Moulds*, 14 So. 3d at 707.

¶9.     "'Arbitration is about choice of forum—period.'" *Id.* (quoting *Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507, 525 (Miss. 2005), *overruled on other grounds by Moulds*, 14 So. 3d 695).  In *Moulds*, this Court held that when a contract required that arbitration be administered by a certain organization, and when such organization was not available to administer arbitration, this Court would not enforce the arbitration agreement. *Moulds*, 14 So. 3d 706–09.  We found that "[a] court should not be used to reform a contract to select a

forum not anticipated by either of the parties." *Id.* at 707. "To do so, the court must become involved and assume powers over parties. Courts' involvement is limited to determining whether to compel agreed-upon arbitration *vel non*. As the court's participation and involvement increase, the reason for arbitration in the first place becomes greatly diminished, and its purpose defeated." *Id.*

¶10.    For the drafter of the contract and party seeking to compel arbitration to prevail, it is "required to show that the situs was merely a minor consideration and that the essence of the bargain was to arbitrate." *Id.* at 708 (citing *Nat'l Iranian Oil Co. v. Ashland Oil*, 817 F.2d 326, 333 (5th Cir. 1987)). In *Moulds*, the contract drafter *prescribed* that one certain organization administer arbitration. *Moulds*, 14 So. 3d at 708. The contract *required* administration by that organization. *Id.* Thus, the Court concluded that administration by that organization "was a contract requirement, which remained a part of the agreement, if it was otherwise enforceable." *Id.* We therefore declined to "rewrite the agreement in favor of the drafter" and "select a forum not anticipated by either party." *Id.* at 709.

¶11.    This Court has distinguished the situation of a required forum being unavailable from arbitration provisions that simply require that parties arbitrate in accordance with the rules of an unavailable forum. *NC Leasing, LLC v. Junker*, 172 So. 3d 155, 160 (Miss. 2015). In *Junker*, the agreement specifically provided that the parties would mutually select an arbitrator, that the parties did "*not* agree to use the [unavailable forum] to conduct or *administer* any arbitration agreement . . . nor do they agree to use the [organization's]

7

arbitrators[,]" and that the arbitration would simply follow the procedural rules of the organization. *Id.* at 160–61 (emphasis added). Arbitration clauses that simply require the parties to arbitrate according to the rules of an unavailable forum are therefore enforceable. *Id.*

¶12. Indeed, the Supreme Court of South Carolina, citing numerous cases including *Moulds*, has noted that Mississippi is not alone in such a distinction:

> [A] majority of jurisdictions distinguish agreements requiring a proceeding "administered by" the named forum from those requiring a proceeding conducted "in accordance with" the named forum's rules. In the case of proceedings "administered by" a named forum, most courts view the forum selected as an integral term of the agreement because it is an express statement of the parties' intent to arbitrate exclusively before that forum; therefore, if the forum is unavailable, a material term of the agreement has failed, rendering the entire arbitration agreement invalid.

*Dean v. Heritage Healthcare of Ridgeway, LLC*, 759 S.E.2d 727, 733 (S.C. 2014) (citations omitted).

> Conversely, in the case of proceedings conducted "in accordance with" a named forum's rules, most courts view that forum "selection," if it was intended to serve as such, as an ancillary consideration to the parties' primary intent of arbitrating, in front of any arbitrator, while using a set of pre-specified rules; therefore, if the forum itself is unavailable, courts nonetheless uphold the arbitration agreement and compel arbitration in an alternate forum, so long as the alternate forum follows the agreed-upon rules.

*Id.* (citations omitted).

### 4. *The Parties' Arbitration Agreement*

¶13. The parties' arbitration agreement, drafted by CCC, provides that all claims "*shall* be submitted to arbitration *before* the Southern Arbitration and Mediation Association."

8

(Emphasis added).  The contract language requires that arbitration be conducted by SAMA.

Not only is SAMA unavailable, it was unavailable at the time the contract was executed and

had been an impossibility for approximately seventeen years prior to the contract's execution.

CCC, as the drafter, could have rectified that issue, but it did not.  Because the contract

explicitly requires the arbitration be conducted in an unavailable forum, *Moulds* is clearly

applicable.[5]  Arbitration by SAMA was a contract requirement.

¶14.    The dissent upends basic principles of contract law to unilaterally eliminate SAMA

from the contract at issue.  If a contract is not ambiguous, courts must "enforce the contract

*as written*."  *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 751

(Miss. 2003) (emphasis added).  Our primary method of contract interpretation is focused on

the words used in the contract.  The words used are of the utmost importance.

> "In contract construction cases a court's focus is upon the objective fact—the
> *language* of the contract. [A reviewing court] is concerned with *what the
> contracting parties have said to each other*, not some secret thought of one not
> communicated to the other." *Turner v. Terry*, 799 So. 2d 25, 32 (Miss. 2001);
> *Osborne v. Bullins*, 549 So. 2d 1337, 1339 (Miss. 1989). A reviewing court
> should seek the legal purpose and intent of the parties from an objective
> reading of the words employed in the contract to the exclusion of parol or
> extrinsic evidence. *The reviewing court is not at liberty to infer intent contrary*

---

[5]The language of the contract at issue is plain and unambiguous in its requirement to use SAMA to arbitrate any dispute.  Because the dissent ignores the plain and unambiguous language, it seems to have found an ambiguity in the contract.  But "[o]nce a contract is found to be ambiguous, resolution of any uncertainties will be against the drafter of the contract."  *Dalton v. Cellular S., Inc.*, 20 So. 3d 1227, 1232 (Miss. 2009).  The dissent eliminates this principle of contract law, finding that both "parties did not care enough to investigate whether SAMA still existed[.]"  Diss. Op. ¶ 31.

*to that emanating from the text at issue*. *Cooper v. Crabb*, 587 So. 2d 236, 239 & 241 (Miss. 1991).

. . . First, the "four corners" test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement. [*Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 352 (Miss. 1990)] (citing *Pfisterer v. Noble*, 320 So. 2d 383, 384 (Miss. 1975)). We must look to the "four corners" of the contract whenever possible to determine how to interpret it. *McKee v. McKee*, 568 So. 2d 262, 266 (Miss. 1990). When construing a contract, we will read the contract as a whole, so as to give effect to all of its clauses. *Brown v. Hartford Ins. Co.*, 606 So. 2d 122, 126 (Miss. 1992). Our concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy. *Simmons v. Bank of Miss.*, 593 So. 2d 40, 42–43 (Miss. 1992). Thus, the courts are not at liberty to infer intent contrary to that emanating from the text at issue. *Id.* (citing *Cooper*, 587 So. 2d at 241). . . . Only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent. [*Pursue Energy Corp.*, 558 So. 2d at 352]. "[T]he mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law." *Turner*, 799 So. 2d at 32; *Cherry v. Anthony*, 501 So. 2d 416, 419 (Miss. 1987).

*Royer Homes*, 857 So. 2d at 752–53 (emphasis added). The dissent eliminates the plain language of the contract and determines that the "secret thought" between the parties was indifference to the use of SAMA to arbitrate, despite the words of the contract clearly and unambiguously requiring SAMA to preside over any arbitration. While it may be true that CCC as the drafter of the contract made a mistake in failing to change its arbitration provision, it is not the job of this Court to defy the plain language of the contract to fix any such mistake.

¶15.    CCC argues that this case is distinguishable from *Moulds* because Section 11-15-109 applies to this contract, and did not apply to the contract in *Moulds*. First, the similar Section

10

5 of the FAA did apply to the contract in *Moulds*, as the Court held that "[t]he FAA applies to the contract at issue." *Moulds*, 14 So. 3d at 701. However, the *Moulds* Court did not discuss Section 5 of the FAA in finding the arbitration clause unenforceable due to forum unavailability. Additionally, the language in Section 5 of the FAA differs slightly from the language of Section 11-15-109. While Section 11-15-109 provides that a court may appoint an arbitrator "if the agreed method *fails* or *for any reason* cannot be followed," the FAA seemingly more narrowly provides that a court may appoint an arbitrator "if for any other reason there shall be a lapse in the naming of an arbitrator[.]" Miss. Code Ann. § 11-15-109 (Rev. 2019) (emphasis added); 9 U.S.C.A. § 5.

¶16.    The construction arbitration statutes reference the parties' "agreement" in multiple statutory provisions. Indeed, the statutes only apply to "agreements." Miss. Code Ann. § 11-15-101 (Rev. 2019). The parties may "agree" to arbitration. Miss. Code Ann. § 11-15-103 (Rev. 2019). An order to compel arbitration is "an order directing the parties to proceed with arbitration *in accordance with the terms of such agreement or provision*." Miss. Code Ann. § 11-15-105 (Rev. 2019) (emphasis added). Several provisions provide for procedural arbitration rules, and provide that these rules apply "unless otherwise provided in the agreement or provision for arbitration." Miss. Code Ann. §§ 11-15-111, -113, -121 (Rev. 2019). While the construction arbitration statutes clearly aim to encourage arbitration and fill in details when the parties clearly agreed to arbitrate, thus enforcing a valid contractual obligation to arbitrate much like the FAA, nothing in the statutes indicates a legislative intent

11

to completely supplant the right to contract. Indeed, the statutes allow the courts to determine whether "a substantial issue is raised as to the making of the agreement or provision[.]" Miss. Code Ann. § 11-15-105(1) (Rev. 2019).

¶17.    Arbitration, even in construction contracts, remains a creature of contract. While the language of Section 11-15-109 is broad, it cannot be used to require the courts to completely reform a contract. When the essence of the agreement is to arbitrate and the situs or arbitrator is a minor consideration, Section 11-15-109 may be used to designate an arbitrator if necessary. *See Moulds*, 14 So. 3d at 708. However, when the situs or arbitrator is a contract requirement, courts should not rewrite an agreement due to forum availability in favor of the drafter to select a forum unanticipated by either party. *Id.* at 708–09. CCC mandated that arbitration be before SAMA. Moreover, there exists an issue as to the making of the provision pursuant to Section 11-15-105 in that CCC's own requirement was an impossibility when the contract was executed and had been so for approximately seventeen years. Instead of drafting a contract that provided for an entity actually in existence to administer arbitration or providing backup methods of arbitration in its contract, CCC now asks the courts to remedy its failures in contract drafting. This Court declines to do so and consequently reverses the order compelling arbitration and appointing an arbitrator.

**5.    *Waiver***

¶18.    The Hillhouses argue that CCC's delay in pursuing a hearing on its motion to compel arbitration amounts to a waiver of any right to arbitrate and that the nearly ten-month delay

was presumptively prejudicial. CCC argues that the Hillhouses were not actually prejudiced, that it did not actively participate in litigation aside from responding to discovery, and that it did not waive its right to pursue arbitration. Because this Court finds that the arbitration provision is unenforceable due to forum unavailability, we need not address this issue.

## CONCLUSION

¶19.   Because the arbitration provision unequivocally requires use of an unavailable forum, and moreover because that forum was unavailable at the time the contract was executed, the arbitration provision is unenforceable. This Court therefore reverses the trial court's order compelling arbitration and appointing an arbitrator and remands the case for further proceedings.

¶20.   **REVERSED AND REMANDED.**

¶21.   **RANDOLPH, C.J., KITCHENS, P.J., ISHEE AND GRIFFIS, JJ., CONCUR. MAXWELL, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, BEAM AND CHAMBERLIN, JJ.**

**MAXWELL, JUSTICE, DISSENTING:**

¶22.   Affirming the trial court's order to compel arbitration does not require that we rewrite the arbitration agreement. Instead, it merely requires that we apply Mississippi Code Section 11-15-109 (Rev. 2019). Section 11-15-109 statutorily fills in any gap, arising due to any reason, in a construction contract's agreed method of arbitration. Because the trial court properly applied Section 11-15-109, I dissent. I would affirm the trial court's order compelling arbitration.

13

¶23. The question prompted by this appeal is actually quite straightforward: Was submitting the dispute to the Southern Arbitration and Mediation Association (SAMA) an essential term of the arbitration provision?

¶24. It is undisputed that SAMA had already ceased to exist long before the Hillhouses and Cook Construction executed the contract. So obviously, one cannot say that being able to submit any arising dispute *to SAMA* was so material to the agreement to arbitrate that SAMA's non-existence renders the arbitration provision unenforceable. Rather, neither of the parties even bothered to confirm SAMA in fact existed before contracting. So what we are faced with here is an arbitration agreement in which the agreed-upon method of arbitration—which could not have been essential to the parties—cannot be followed. Mississippi Code Section 11-15-109 speaks directly to this situation. It says when "the agreed method fails or for any reason cannot be followed," the court must "appoint one or more arbitrators." Miss. Code Ann. § 11-15-109. Because the trial court followed Section 11-15-109's clear directive when ordering arbitration, I dissent.

¶25. In holding that the trial court erred, the majority relies heavily on ***Covenant Health & Rehabilitation v. Estate of Moulds***, 14 So. 3d 695 (Miss. 2009). Citing ***Moulds***, it concludes we would be rewriting the contract if we affirmed the trial court's enforcement of the arbitration provision. But ***Moulds*** is very different from what we face and can be distinguished in three key ways.

14

¶26.    First, before the Court even reached the issue of forum unavailability, the *Moulds* Court already declared the entire nursing home admissions agreement unconscionable and unenforceable. *Id.* at 706. So the Court was already dealing with an arbitration provision that was dead on arrival when it addressed forum unavailability.

¶27.    Second, and more important, the *Moulds* Court was not dealing with an arbitration provision in a construction contract. So the question never arose whether Section 11-15-109 should be applied because the agreed method could not be followed. Even the majority concedes the application of Section 11-15-109 is an issue of first impression, one obviously not addressed by *Moulds*.

¶28.    Third, the unconscionable nursing home admissions agreement in *Moulds* not only provided that any disputes would be resolved by arbitration "administered by the American Arbitration Association" but also that "its rules and procedures" would be used. *Moulds*, 14 So. 3d at 706. As part of its rules, AAA *required* individual patients agree *post*-dispute to arbitrate. *Id.* As the Court noted, the nursing home continued to require that binding arbitration still follow AAA rules, even when AAA changed its rules to mandate a post-dispute agreement to arbitrate. *Id.* at 708. So in that case, even if the court supplied a non-AAA arbitrator, "the arbitrator would still be bound to apply AAA rules, which would require [the individual patient] to agree, post-dispute, to be bound to arbitrate, which he has expressly disavowed his interest in doing." *Id.* That is not at all the case here. Beyond the

non-existent SAMA, the arbitration agreement does not hamstring the parties' ability to arbitrate.

¶29.    Interestingly, *Moulds* in part relied on the Fifth Circuit case, *National Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326 (5th Cir. 1987), which framed the forum-unavailability issue in a way that is very helpful to analyzing this case. *Moulds*, 14 So. 3d at 708. In *National Iranian Oil*, the parties agreed to arbitrate in Tehran and apply Iranian law—something that became dangerous and legally impossible after the departure of the Shah in November 1979, seven months after the contract was executed. *Nat'l Iranian Oil*, 817 F.2d at 333. In determining whether to grant the request to arbitrate elsewhere, the Fifth Circuit had to decide if the essence of the bargain was to arbitrate, with the chosen situs of Tehran being "merely a minor consideration[.]" *Id.* at 333. Or was the provision that the arbitration occur in Tehran and apply Iranian law so important that it was essential to the agreement to arbitrate? *Id.* The Fifth Circuit found "[t]he language of the contract thus makes self-evident the importance of Iranian law and Iranian institutions to [National Iranian Oil]," suggesting that the selection of Tehran was just as important as the agreement to arbitrate itself. *Id.* at 334.

¶30.    It is abundantly clear that cannot be said in this case. It is not self-evident from the arbitration agreement's language that submission to SAMA was just as important as the agreement to arbitrate itself. How could it be, since SAMA did not exist and had been long

16

defunct when the agreement was entered? In contrast to *National Iranian Oil*, no geopolitical shift thwarted the parties' choice; rather, it was the parties' own indifference.

¶31. In other words, if the parties did not care enough to investigate whether SAMA still existed, SAMA's continued existence can hardly be said to be essential to the agreement to arbitrate. Thus, the agreement to arbitrate can be enforced, even though the SAMA provision cannot. In fact, Section 11-15-109 provides for this very scenario. Here, the "provision for arbitration provide[d] a method for the appointment of arbitrators," "the agreed method fail[ed] or for any reason cannot be followed," so "the court, on application of a party to such agreement or provision," which was made by Cook Construction, "shall appoint one or more arbitrators." Miss. Code Ann. § 11-15-109.

¶32. Because the trial court did just that, it committed no reversible error.

**COLEMAN, BEAM AND CHAMBERLIN, JJ., JOIN THIS OPINION.**

17